**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Floyd Joseph MONACO, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 2009.

Filed May 12, 2010.

Reargument Denied July 23, 2010.

Caroline Roberto, Pittsburgh, for appellant.

Thomas W. Minnett, Assistant District Attorney, New Castle, for Commonwealth, appellee.

BEFORE: GANTMAN, KELLY, AND POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Floyd Joseph Monaco, appeals from the order entered in the Lawrence County Court of Common Pleas, which denied and dismissed his serial petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. On the night of June 12, 1979, Appellant and an associate attempted to sell fifty (50) pounds of marijuana. Undercover police officers interrupted he drug sale. Appellant drew his gun and fired one shot in the direction of the police officers and a second shot toward a nearby building and railroad; the second shot ricocheted toward the police officers. Both shots hit State Trooper Albert Izzo, who died from the resulting injuries.

¶ 3 On November 26, 1979, Appellant pled guilty to criminal homicide generally. The court held several hearings to determine Appellant's degree of guilt and found Appellant guilty of first degree murder. On January 19, 1982, the court sentenced Appellant to life imprisonment without the possibility of parole. This Court affirmed the judgment of sentence on May 18, 1984. *See Commonwealth v. Monaco,* 327 Pa.Super. 369, 475 A.2d 843 (1984) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court. On September 3, 1986, Appellant filed his first PCRA petition. On May 18, 1988, the PCRA court reinstated Appellant's right to file a petition for allowance of appeal *nunc pro tunc* with the state Supreme Court, which Appellant then filed. The Supreme Court denied the petition on October 17, 1989. *See Com-*

---

1. 42 Pa.C.S.A. §§ 9541–9546.

*monwealth v. Monaco,* 523 Pa. 648, 567 A.2d 652 (1989) (Table).

¶ 4 Appellant filed a PCRA petition in January 1997 and another PCRA petition in August 2003. Each time, the PCRA court denied and dismissed the PCRA petition. The Superior Court affirmed the denial of the 1997 PCRA petition, and the Supreme Court denied Appellant's petition for review. *See Commonwealth v. Monaco,* 739 A.2d 590 (Pa.Super.1999), *appeal denied,* 560 Pa. 701, 743 A.2d 917 (1999). Appellant withdrew his appeal from the denial of his 2003 PCRA petition on May 5, 2004.

¶ 5 Meanwhile, Appellant also filed a petition for federal *habeas corpus* relief in January 2000. In October 2001, the federal district court for the Western District of Pennsylvania denied the *habeas* petition, and the third circuit Court of Appeals denied Appellant's request for a certificate of appealability in March 2003.

¶ 6 On June 5, 2007, Appellant *pro se* filed the instant PCRA petition, raising his diagnosis of Post–Traumatic Stress Disorder ("PTSD") as a newly discovered fact. On January 7, 2008, counsel filed an amended PCRA petition. On March 26, May 9, and July 28, 2008, the PCRA court held hearings to address whether Appellant had satisfied an exception to the PCRA timeliness requirements.

¶ 7 At the evidentiary hearings for this petition, Appellant put the following into evidence. Appellant fought in the Vietnam War while serving in the United States Marines Corps. In the summer of 2002, Appellant met Timothy Susengill who was speaking about PTSD at the State Correctional Institution at Huntington where Appellant was incarcerated. Appellant met with Mr. Susengill several times to discuss PTSD and the possibility that Appellant might have PTSD. In October 2003, Mr. Susengill filed an informal

benefits claim with the United States Department of Veterans Affairs ("VA") on behalf of Appellant. Appellant gave Mr. Susengill a limited power of attorney to allow Mr. Susengill to pursue Appellant's VA benefits claim. In March 2004, Mr. Susengill filed a formal claim for benefits with the VA, asserting Appellant suffered from PTSD as a result of his military service. In April 2004, a VA psychiatrist, Dr. Silverman, examined Appellant and concluded Appellant did not have PTSD. On May 27, 2004, the VA denied Appellant's claim for benefits. Appellant received notice of the denial by letter dated June 12, 2004. In August 2004, Mr. Susengill filed a notice of disagreement with the VA's decision and appealed the decision. Appellant's appeal lapsed, and the VA closed the case.

¶ 8 On April 25, 2005, Mr. Susengill arranged for Dr. Heidi Sedwick, a non-VA affiliated psychiatrist, to evaluate Appellant for PTSD. Dr. Sedwick concluded Appellant had PTSD and issued a report summarizing her findings in May 2005. Based upon Dr. Sedwick's report, Mr. Susengill petitioned the VA to reopen Appellant's claim for benefits in September 2005. Within thirty (30) days of the petition to reopen Appellant's claim, Mr. Susengill told Appellant Dr. Sedwick's psychiatric report contained information sufficient to reopen the VA case. Mr. Susengill, however, did not tell Appellant that Dr. Sedwick had concluded Appellant had PTSD or provide Appellant with a copy of Dr. Sedwick's report.

¶ 9 Over a year later, on December 1, 2006, a VA psychiatrist, Dr. Jacoby, examined Appellant and concluded he suffered from PTSD. On February 5, 2007, Appellant wrote to the VA and requested copies of his psychiatric evaluations by Dr. Sedwick and Dr. Jacoby. By letter dated February 13, 2007, the VA told Appellant

he would receive the reports as soon as they were available. On April 26, 2007, the VA issued its ratings decision that found Appellant had a mild form of PTSD and granted Appellant disability benefits. On or about May 30, 2007, Appellant received copies of Dr. Sedwick's and Dr. Jacoby's reports; and on June 5, 2007, Appellant filed the instant PCRA petition based upon his PTSD diagnosis.

¶ 10 At the close of the hearing on July 28, 2008, the court asked the parties for briefs to aid in the decision of the case. On January 23, 2009, the court denied and dismissed Appellant's PCRA petition as untimely. On February 19, 2009, Appellant filed a notice of appeal. On March 4, 2009, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on March 23, 2009.

■ ¶ 11 Appellant presents one issue for our review.

WHETHER THE PCRA COURT ERRED, IN VIOLATION OF DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, IN FINDING THAT [APPELLANT'S] FOURTH PCRA PETITION WAS UNTIMELY WHERE [APPELLANT] FILED HIS PETITION, *PRO SE*, WITHIN SIXTY (60) DAYS OF LEARNING HIS PSYCHIATRIC DIAGNOSIS OF COMBAT RELATED POST TRAUMATIC STRESS DISORDER AND RECEIVING THE EXPERT REPORTS IN SUPPORT OF THE DIAGNOSIS, IN COMPLIANCE WITH TITLE 42 Pa.C.S.A. §§ 9453(a); 9545(b)(1)(ii) AND 9545(d)(1)?

(Appellant's Brief at 3).

■ ¶ 12 Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003). The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa. C.S.A. § 9545(b)(1); *Commonwealth v. Bretz*, 830 A.2d 1273, 1275 (Pa.Super.2003); *Commonwealth v. Vega*, 754 A.2d 714, 717 (Pa.Super.2000). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

■ ¶ 13 The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). "As such, when a PCRA petition is not filed within

one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." *Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000); 42 Pa.C.S.A. § 9545(b)(2).

■ ¶ 14 The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett*, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa.Super.2001). A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron*, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001); *Commonwealth v. Yarris*, 557 Pa. 12, 29, 731 A.2d 581, 590 (1999). This rule is strictly enforced. *See Vega, supra* at 718.

¶ 15 Our Supreme Court has generally rejected the concept of equitable exceptions to the statutory timeliness requirements of the PCRA. *Commonwealth v. Fahy*, 558 Pa. 313, 329, 737 A.2d 214, 222 (1999) (stating: "[I]n the case of the PCRA, the time limitations are extended upon satisfaction of the exceptions found in § 9545(b)(1)(i)-(iii) and timely filing pursuant to (b)(2). As it has been established that the PCRA's time restrictions are jurisdictional, we hold that the period for filing a PCRA petition is not subject to the doctrine of equitable tolling, save to the extent the doctrine is embraced by § 9545(b)(1)(i)-(iii)") (emphasis added).

We are compelled to remind ourselves of the reason for such limitations:

There is absolutely no doubt that there is an enduring societal interest in the finality of criminal proceedings. Indeed, one of the law's very objects is the finality of its judgments. Finality is essential to both the retributive and the deterrent functions of criminal law for neither innocence nor just punishment can be vindicated until the final judgment is known. That societal interest in finality encompasses a concern for the victims of crime and their families. This compelling interest in finality that is shared both by society and the state absolutely requires, to put it simply, that at some point litigation must come to an end. In Pennsylvania, the societal interest in finality is not just a notion of criminal theory; rather, it is reflected in the very letter of our PCRA. Indeed, the primary intent of many of the Act's 1995 amendments was to narrow the grounds for collateral relief and thereby establish a scheme by which collateral petitions may be processed promptly in order to achieve finality. ... ... the reason why convicted defendants are permitted to seek collateral relief is not to provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their convictions. In reviewing collateral appeals, it is the role of [the appellate courts] to distinguish between the wrongly or unfairly convicted and those who deserve their sanctions.

*Commonwealth v. Sam*, 597 Pa. 523, 542–43, 952 A.2d 565, 576–77 (2008) (internal citations and quotation marks omitted).

■ ¶ 16 Only under a very limited circumstance has the Supreme Court ever allowed a form of mental illness or incom-

petence to excuse an otherwise untimely PCRA petition. *See, e.g., Commonwealth v. Cruz,* 578 Pa. 325, 338–43, 852 A.2d 287, 294–97 (2004) (holding defendant's claims may fall under after discovered facts exception to PCRA timeliness requirements where his mental incompetence prevented defendant from timely raising or communicating claims). *But see Sam, supra* and its companion case *Commonwealth v. Watson,* 597 Pa. 483, 952 A.2d 541 (2008) (holding court erred in denying Commonwealth's request for involuntary administration of antipsychotic medication to restore death-row inmate competency so that he could participate in timely instituted post-conviction proceedings). Thus, the general rule remains that mental illness or psychological condition, absent more, will not serve as an exception to the PCRA's jurisdictional time requirements. *Commonwealth v. Hoffman,* 780 A.2d 700, 703 (Pa.Super.2001).

¶ 17 Instantly, the court imposed Appellant's sentence on January 19, 1982. This Court affirmed the judgment of sentence on May 18, 1984. Appellant did not seek further review at that time. The PCRA court reinstated Appellant's right to file a petition of allowance of appeal with the Pennsylvania Supreme Court, which he then filed and the Pennsylvania Supreme Court denied on October 17, 1989. Accordingly, Appellant's judgment of sentence became final for PCRA purposes on or about December 16, 1989, upon expiration of the time to file a petition for *certiorari* with the United States Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3); former U.S.Sup.Ct.R. 20.1.[2] Appellant filed the current PCRA petition on June 5, 2007, over seventeen (17) years later. Therefore, Appellant's current PCRA petition is untimely on its face.

¶ 18 Appellant attempts to invoke an exception to the time restrictions of the PCRA, arguing the fact of his PTSD diagnosis was unknown to him and could not have been ascertained by the exercise of due diligence. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). Appellant asserts our Supreme Court's interpretation of Section 9545(b)(1)(ii) in *Bennett,* requires a petitioner be given an opportunity to develop his claim and present it in a meaningful manner. Appellant argues he could not have presented his claim in a meaningful manner until May 2007 when Appellant finally received Dr. Sedwick's and Dr. Jacoby's psychiatric reports from the VA, which confirmed Appellant was "unequivocally diagnosed" with PTSD and had expert reports to support that diagnosis. (Appellant's Brief at 22).

¶ 19 Appellant argues Mr. Susengill's "belief" that Appellant had PTSD did not constitute a definitive diagnosis of PTSD, because Mr. Susengill was not a psychiatrist; therefore, Appellant lacked a sufficient foundation for a PCRA petition on that basis in 2002 and 2003. Appellant similarly argues Dr. Sedwick's evaluation of Appellant and conclusion Appellant suffered from PTSD in May 2005, did not trigger Section 9545(b)(2)'s sixty-day filing time limit, because Appellant did not receive a copy of Dr. Sedwick's report or know the exact results of her evaluation. Appellant asserts mere knowledge that Dr. Sedwick's report contained information sufficient to petition the VA to reopen his

---

2. When the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on October 17, 1989, Appellant had sixty (60) days to file a petition for *certiorari* under U.S.Sup.Ct.R. 20.1. Under Rule 20.1, Appellant's time to file an appeal expired on or about December 16, 1989. Effective January 1, 1990, the rule was renumbered U.S.Sup. Ct.R. 13 and enlarged the time for filing a petition for *certiorari* to ninety (90) days. Appellant's time limits fell under the old rule.

claim for benefits could not constitute a basis for a PCRA claim.

¶ 20 Finally, Appellant contends the PCRA court could not impute Mr. Susengill's knowledge of the PTSD diagnosis to Appellant, because agency principles should not apply to post-conviction law. Even if agency principles are applicable, Appellant maintains Mr. Susengill was a limited agent who could act on Appellant's behalf only to pursue the VA benefits; consequently, the extent of Mr. Susengill's knowledge of the PTSD diagnosis should not be imputed to Appellant. Because he did not have adequate information to present a meaningful PCRA claim until May 2007, Appellant concludes this Court should reverse the order denying and dismissing his current PCRA petition and remand the matter to the PCRA court for an evidentiary hearing on Appellant's substantive claims. We cannot agree with these contentions.

¶ 21 To qualify for the exception to the PCRA time restrictions, found in Section 9545(b)(1)(ii), Appellant had to demonstrate he exercised due diligence in learning the purported "newly discovered" facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). Analyzing Appellant's efforts under the "due diligence" standard, we observe Appellant first suspected he suffered from PTSD in 2002 or 2003. Appellant's suspicions were sufficient to motivate him to contact Mr. Susengill and pursue VA disability benefits. Nonetheless, Appellant took no other steps to verify he had PTSD, outside the VA benefits application pro-

cess. During this time, Appellant was also pursuing his 2003 PCRA petition. Appellant, however, simply waited for the VA psychiatric evaluation and decision, then allowed his VA appeal to lapse, and only later petitioned to reopen his VA claim. Appellant failed to explain his lack of action or, alternatively, why he could not or did not obtain another evaluation to establish a definite diagnosis of PTSD at an earlier date. *See Breakiron, supra.* Therefore, we conclude Appellant failed to demonstrate he exercised due diligence in ascertaining the asserted "newly discovered" fact of his PTSD. *See Carr, supra.*

¶ 22 Moreover, assuming the VA's earlier conclusion in June 2004 (that Appellant did not have PTSD) relieved Appellant of any responsibility to pursue his PCRA claim prior to that date, Appellant still failed to exercise due diligence. In May 2005, Dr. Sedwick concluded Appellant suffered from PTSD. As of August–September 2005, Appellant knew Dr. Sedwick had issued a report sufficient to reopen his VA disability claim based on PTSD. Thus, Appellant knew or should have known Dr. Sedwick supported the PTSD diagnosis in a manner that was sufficient to contest the VA's prior determination. Appellant sought no independent psychiatric evaluation or attempt to obtain Dr. Sedwick's evaluation.[3] *See Carr, supra.* Appellant has again failed to explain why he did not take or could not have learned of his PTSD diagnosis sooner, had he taken those steps.[4] *See Breakiron, supra.* Sig-

---

[3]. Appellant was certainly able to obtain an independent psychiatric evaluation three years later to support his amended PCRA petition, filed in January 2008. (*See* Declaration of Dr. Pablo Steward, attached as Appendix C–1 to Appellant's Amended PCRA Petition, filed 1/7/08).

[4]. We recognize that the existence of a mental illness for the purposes of post-conviction re-

lief is a question with which other jurisdictions have struggled. *See Orndorff v. Commonwealth,* 271 Va. 486, 628 S.E.2d 344 (2006) (holding dissociative identity disorder diagnosis constituted new evidence where psychiatrists reevaluated their prior psychiatric assessments and diagnosed disorder after trial); *State v. Bilke,* 162 Ariz. 51, 781 P.2d 28 (1989) (holding defendant's PTSD diagnosed

nificantly, Appellant does not allege his PTSD impaired his mental ability to raise or communicate his claim; thus, Appellant's PTSD diagnosis does not fall within the narrow *Cruz* holding. *See Cruz, supra.* As a result, Appellant does not qualify for the newly discovered facts exception to the PCRA timeliness requirements on the ground alleged. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). Accordingly, we affirm the PCRA court's decision to deny and dismiss Appellant's petition as untimely.[5]

¶ 23 Order affirmed.

after conviction constituted newly discovered evidence because diagnosis was not recognized until after trial and defendant was diligent in pursuing post-conviction remedy based on PTSD); *People v. Silagy,* 116 Ill.2d 357, 107 Ill.Dec. 677, 507 N.E.2d 830 (1987) (holding defendant's post-conviction diagnosis of PTSD was not new evidence where defendant presented evidence of mental defect based on PTSD symptoms at trial); *People v. McSwain,* 259 Mich.App. 654, 676 N.W.2d 236 (2003) (holding "[f]ailure to recognize a reasonably discoverable mental illness is not enough to require a grant of postjudgment relief, especially a number of years later").

5.  On November 30, 2009, Appellant filed a motion for post-submission communication pursuant to Pa.R.A.P. 2501(a). By order filed December 9, 2009, we granted the motion and accepted the case as submitted for reference. *See Porter v. McCollum,* — U.S. —, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (holding counsel's stewardship was deficient, where counsel failed to uncover and present during penalty phase in death penalty case any mitigating evidence regarding defendant's mental health, family background, or military service, particularly mental and emotional toll intense stress of combat had on defendant).

Here, Appellant offered nothing by way of a well-drafted argument to show how the *Porter* case is analogous to his case. We note the *Porter* decision might have some relevance to Appellant's substantive claim. Nevertheless, we conclude *Porter* is fundamentally inapposite regarding the application of the newly discovered facts exception at issue in the present case.