J-S36029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALE M. JOHNSON | |
| Appellant | No. 1858 WDA 2014 |

Appeal from the PCRA Order October 29, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016792-2008

BEFORE: PANELLA, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 16, 2015**

Appellant Dale Johnson appeals from the order of the Allegheny County Court of Common Pleas dismissing as untimely his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. We affirm.

In a previous disposition in this case, the PCRA court summarized the relevant facts as follows:

> On August 13, 2008, [the victim] was attacked at his home. He first heard the sound of his back door crashing in. An intruder approached him at great speed, hit him on the head and threw him to the floor. The intruder wore a white mask and hit him on his head and face with a heavy object. A second person was present who the victim did not see. The victim heard two voices, one voice was heard to say, "Shoot him now." The victim could not tell which of

---

[*] Retired Senior Judge assigned to the Superior Court.

the intruders uttered the statement. A gun was placed into his mouth and the victim heard it click. During the incident, the victim's watch was taken from him.

Officer Klobucher testified that he was a patrol officer on duty and in full uniform on the night in question. He stated that he was dispatched following a call from a neighbor that two individuals were attempting to gain entry to the victim's residence. Officer Klobucher was the first officer to arrive at the scene, less than a minute and a half from the time he was dispatched. Upon arrival, from the back of the house, he observed the broken back door, looked inside the house, and saw two individuals. They were both wearing masks, one mask tan and one mask white. Both individuals were making punching and pushing motions toward the floor.

Eventually, the actor wearing the tan mask saw the Officer and extended his right arm straight out in front of him with his fist clenched. The Officer observed an object in the actor's right hand but could not positively identify the object. Believing the object to be a gun, he took cover and drew his firearm. When he looked back into the residence, the masked individuals were no longer in sight.

In the meantime, backup officers arrived on the scene. One suspect was apprehended in the basement. A firearm and a white bandana were recovered in the basement. The other individual was apprehended in the front of the residence. He was wearing a tan mask. That individual was identified by the [apprehending] Officer as [Appellant].

Officer Frisk, upon arrival, positioned himself in front of the house and observed a man wearing a tan mask peer out the front window between the blinds. Approximately ten to fifteen seconds later, a man wearing the same mask "burst through the front door." Officer Frisk yelled for the actor to show his hands and get on the ground. Instead of complying with that directive, [Appellant] continued toward the Officer and the Officer deployed his Taser.

Officer Frisk identified [Appellant] as the man wearing the tan mask who he apprehended leaving the front of the house. [Appellant] did not have a valid license to carry a firearm. The firearm was tested and returned as operable.

> Located on [Appellant's] person, in his right front pants pocket, was a gold and silver watch and a set of car keys. The watch recovered was consistent with what was identified by the victim as his watch.

PCRA Court Opinion, filed November 22, 2011, at 3-5 (internal citations omitted).

At trial, Appellant testified that Dale Tansmore and an individual Appellant did not know asked him for a ride. N.T. at 107.[1] Tansmore directed him to the victim's house, claiming he had to pick up something. *Id.* at 107-08. Appellant waited in the car, while Tansmore and the unknown individual exited the car and went between the houses. *Id.* at 109. About a minute later, the unknown man ran to the car wearing a tan mask. *Id.* Appellant did not let him in the car, but went to the victim's house, and tried to help the victim. *Id.* at 110-11. The police then arrived and arrested Appellant and Tansmore. *Id.* at 112. Appellant further testified that the police did not find the watch on him and the police "obviously found the other man's mask," which the officer put to Appellant's face to see if it fit, stuffed it in his pocket, and said "that must be yours." *Id.* at 113-14.

On July 28, 2009, a jury convicted Appellant of aggravated assault (serious bodily injury), burglary, robbery (serious bodily injury), aggravated

---

[1] The trial occurred on July 24, 2009, July 27, 2009, and July 28, 2009. The transcripts from all trial days are included in one transcript, cited as N.T.

assault (deadly weapon), terroristic threats, and unlawful restraint.[2]   On

October 22, 2009, the trial court sentenced Appellant to an aggregate term

of imprisonment of 12 to 24 years, followed by 5 years' probation.   On

August 31, 2010, this Court affirmed the judgment of sentence, and the

Pennsylvania Supreme Court denied further review on February 2, 2011.

*See Commonwealth v. Johnson*,   11   A.3d   1046   (Pa.Super.2010)

(unpublished memorandum), *appeal denied*, 14 A.3d 825 (2011).

On February 24, 2011, Appellant timely filed a *pro se* PCRA petition.

The court appointed counsel, who later filed a "no-merit" letter pursuant to

*Turner/Finley*,[3] and a motion to withdraw. By order dated February 27,

2011 and filed on April 28, 2011, the PCRA court granted counsel's motion

for leave to withdraw and issued notice of its intent to dismiss Appellant's

petition without a hearing pursuant to Pennsylvania Rule of Criminal

Procedure 907.  On May 16, 2011, Appellant filed objections to the Rule 907

notice.   On May 25, 2011, the PCRA court dismissed Appellant's petition.

Appellant filed a notice of appeal and a concise statement of errors

complained of on appeal.   He then filed an amended concise statement of

errors complained of on appeal, to which he attached an affidavit from

_____

[2] 18 Pa.C.S. §§ 2702(a)(1), 3502(c)(1), 3701(a)(1), 2702(a)(4), 2706, and
2901(a)(1).

[3] *Commonwealth v. Turner*,  544  A.2d  927  (Pa.  1988)  and
*Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super.1988) (*en banc*).

Dayon Chambers, the victim's neighbor, who reported the crime to the police.[4] On May 4, 2012, this Court affirmed the PCRA court's dismissal of the PCRA petition. *See Commonwealth v. Johnson*, 50 A.3d 234 (Pa.Super. 2012) (unpublished memorandum).

On January 16, 2013, Appellant filed a second PCRA petition, attaching a second affidavit from Chambers.[5] On January 18, 2013, the PCRA court issued notice of its intent to dismiss the PCRA petition without a hearing. Appellant again filed objections to the Rule 907 notice. On January 30, 2013, the PCRA court dismissed the petition. This Court affirmed. *Commonwealth v. Johnson*, No. 327 WDA 2013 (Pa.Super. filed Aug. 28, 2013) (unpublished memorandum).

On January 8, 2014, Appellant filed the current PCRA petition, his third. Appellant attached an affidavit from Robert Randolph to this petition. Randolph claimed he was at Chambers' house with a group of about ten people at the time of the incident.[6] On January 14, 2014, Appellant filed an amended petition, attaching an affidavit from Michael Lynn, who also

_____

[4] Amended Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), at Exh. B ("Chambers Affidavit I").

[5] Second Petition for Relief Under the Post Conviction Relief Act, at Affidavit ("Chambers Affidavit II").

[6] Third Petition for Relief Under The Post-Conviction Relief Act, at Affidavit ("Randolph Affidavit").

claimed to have witnessed the incident from Chambers' house.[7] The PCRA court appointed counsel, who filed an amended PCRA petition. Appellant then received an affidavit from a fourth individual, Melvin Edmunds, and filed a motion for leave to amend the PCRA petition, which the PCRA court granted. On August 15, 2014, Appellant filed a second amended PCRA petition, attaching Edmunds's affidavit.[8] On September 18, 2014, the Commonwealth filed an answer to the PCRA petition. On October 7, 2014, the PCRA court issued a Rule 907 notice of its intent to dismiss the petition without a hearing. Appellant filed a response to this notice. On October 29, 2014, the PCRA court dismissed Appellant's third PCRA petition as untimely.

On November 12, 2014, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

> 1. Was the PCRA Court's conclusion that exculpatory witnesses could have been discovered much earlier in the exercise of due diligence erroneous as being both presumptuous and speculative?
>
> 2. Was the PCRA Court's conclusion that the evidence overwhelmingly supported the conviction, thus rendering Appellant's petition "patently frivolous," erroneous where

---

[7] Amendment to Third Petition for Relief Under the Post-Conviction Relief Act, at Affidavit ("Lynn Affidavit").

[8] Second Amended Petition for Post-Conviction Relief Under the PCRA, at Melvin Edmunds Affidavit ("Edmunds Affidavit").

the PCRA Court considered only the evidence received at trial and not Appellant's proffered affidavits?

Appellant's Brief at 3.

Pursuant to Pennsylvania law, "no court has jurisdiction to hear an untimely PCRA petition." *Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa.Super.2010) (citing *Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa.2003)). The PCRA provides that a petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1); *accord Monaco*, 996 A.2d at 1079. A judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Three exceptions to the PCRA's time-bar exist. The exceptions allow for limited circumstances under which a court may excuse the late filing of a PCRA petition. 42 Pa.C.S. § 9545(b)(1); *Monaco*, 996 A.2d at 1079. The late filing of a petition will be excused if a petitioner alleges and proves:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period

provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). When invoking a time-bar exception, the petition must "be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Appellant's judgment of sentence became final on May 3, 2011, 90 days after the Supreme Court of Pennsylvania denied his petition for allowance of appeal on February 2, 2011. **See** U.S. Sup. Ct. R. 13. He had one year from that date, until May 3, 2012, to file a timely PCRA petition. Therefore, his current petition, filed on January 8, 2014, is untimely and we lack jurisdiction unless he satisfies one of the three PCRA time-bar exceptions.

Appellant maintains his petition qualifies for the newly-discovered evidence time-bar exception based on the affidavits from Randolph, Lynn, and Edmunds, which state: the individuals were at a barbeque at the residence of the victim's next-door neighbor; the individuals witnessed the incident; and Appellant was attempting to assist the victim. Appellant's Brief at 11-20; Randolph Affidavit; Lynn Affidavit; Edmunds Affidavit. Appellant does not base his newly-discovered evidence argument on Chambers' affidavits, which he possessed during prior PCRA proceedings. Appellant's Brief at 12.

This Court has explained the newly-discovered evidence exception as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts."

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa.Super.2015) (internal citations omitted).

Appellant knew of Chambers' existence at the time of trial, as the police report notes that Chambers was the reporting party. Further, Appellant previously submitted two affidavits from Chambers. Appellant maintains the Randolph, Lynn, and Edmunds Affidavits are newly-discovered evidence because he and his family members should not be expected to have asked Chambers whether any other individuals were at his house at the time of the incident. He relies on ***Commonwealth v. Medina***, 92 A.3d 1210 (Pa.Super.2014) (en banc) and ***Commonwealth v. Davis***, 86 A.3d 883 (Pa.Super.2014).

In ***Medina***, the defendant submitted an affidavit wherein a witness, who was eleven years old at the time of trial, recanted his trial testimony. 92 A.3d at 1213. The witness claimed he and his brother testified falsely because the investigating detectives threatened them. ***Id.*** This Court found the affidavits satisfied the newly-discovered evidence exception, reasoning:

[T]he credible evidence at the PCRA hearing showed [Appellee] had no information that a detective coerced and threatened the boys causing Hector [Toro] to lie until Hector [Toro] disclosed it at Graterford fourteen years after the trial. There was no evidence that Hector had recanted earlier or at the time of trial other than telling the unidentified detective that he had not seen anything incriminating. There was no evidence that, in the intervening years since trial, [the appellee] learned of the detective's coercion and threats or knew that Hector [Toro] told anyone about lying at trial. The mere fact that [the appellee] knew Hector [Toro] was falsely testifying to having seen him do something he had not done would not provide [the appellee] sufficient information as to why Hector [Toro] was lying. The detective's actions were kept secret from prosecutors, the defense team and the trial court.

*Id.* at 1217.

Similarly, in ***Davis***, this Court found the defendant satisfied the newly-discovered evidence exception. In ***Davis***, two witnesses testified at trial that, although arrested in this or other cases, they did not have an agreement that they would receive favorable treatment if they testified against the defendant. 86 A.3d at 890. At the PCRA stage, the defendant submitted an affidavit from one witness stating he was promised favorable treatment in exchange for his trial testimony. *Id.* at 888-89. The defendant then procured the sentencing transcripts of both witnesses, which confirmed that the witnesses received favorable treatment in exchange for their testimony against the defendant. *Id.* This Court found the defendant satisfied the newly-discovered evidence rule, reasoning:

At no point during the testimony of either witness did the Commonwealth interject to clarify that a deal or leniency was offered to either Watson and/or Diggs. Therefore,

Appellant had no reason to seek out transcripts of those witnesses' sentencing hearings in unrelated cases to look for evidence of such deals. To conclude otherwise would suggest that Appellant should have assumed the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so. Due diligence does not require a defendant to make such unreasonable assumptions. ***See*** [***Commonwealth v. Selenski****,* 994 A.2d 1083, 1089 (Pa.2010)] (defining the due diligence required by the Commonwealth in Pa.R.Crim.P. 600 issues as "fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing that the Commonwealth has put forth a reasonable effort").

Instead, Appellant's efforts were adequately diligent under the circumstances of this case. After receiving Watson's affidavit indicating that Watson had received lenient treatment by the Commonwealth in exchange for his testimony, Appellant acquired the transcripts of Watson's sentencing proceeding. Appellant also acquired the transcripts of Diggs' sentencing proceeding, evincing that Appellant acted diligently in suspecting that the Commonwealth may have also concealed a deal offered to Diggs. Such efforts by Appellant amounted to due diligence in ascertaining this claim.

***Id.*** at 890-91 (emphasis deleted).

Here, the PCRA court concluded:

Chambers' affidavits establish his availability as a witness as far back as 2011. Had Appellant exercised due diligence *(e.g.* asking Chambers what he was doing prior to observing the incident, who else would have observed it, etc.) the existence of other potential witnesses would have been easily discoverable. The witnesses were available for Appellant's prior PCRA petitions but for his own lack of due diligence in finding them. As Appellant failed to exercise due diligence in obtaining his alleged [newly]-discovered evidence, this [c]ourt did not err in dismissing his third PCRA petition without a hearing.

Pa.R.A.P. 1925(a) Opinion, 3/10/2015, at 5.

- 11 -

The PCRA court did not abuse its discretion. Unlike **Medina** and **Davis**, Appellant does not claim the Commonwealth coerced false testimony from any witness or permitted false testimony to go uncorrected. Chambers' affidavit claims the police said they would contact him and the remaining three affiants claim they spoke with the police. However, unlike **Davis**, there is no support for these claims. Further, as the PCRA court found, Appellant did not act diligently. He has known of Chambers' existence since prior to trial and has known Chambers' alleged testimony would support Appellant's testimony that he was attempting to aid the victim as of 2011, the filing of Mr. Chambers' first affidavit. Appellant would have discovered the existence of the alleged additional witnesses had he asked Chambers whether any other witnesses existed.[9] Finally, unlike **Davis** and **Medina**,

_____

[9] Appellant notes that there is no explanation as to why Chambers did not inform anyone that he had guests at his residence at the time of the incident and argues we should not presume Chambers would have revealed the existence of his alleged guests had he been asked whether others witnessed the incident. Appellant's Brief at 16, 16 n.5. The burden is on Appellant to establish he acted diligently and, therefore, the burden is on Appellant to prove Chambers would not have revealed this information had he been asked. **See** 42 Pa.C.S. § 9545(b)(1)(ii); **Commonwealth v. Bennett**, 930 A.2d 1264, 1270 (Pa.2007) (petition must allege and prove the facts were "unknown" to him and could not have been ascertained through the exercise of due diligence). Appellant procured two other affidavits from Chambers and offers no explanation as to why he could not have procured a third affidavit to explain Chambers' failure to mention the 10-12 people that were at his house at the time of the incident.

the police officers arrested Appellant as he was exiting the victim's residence, at which time he had the victim's watch and a mask.[10]

Order affirmed.[11] The Reply Brief of Appellant is stricken as untimely filed without good cause shown pursuant to Pa.R.A.P. 2185.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/16/2015

---

[10] The affidavits conveniently claim the police planted these objects on Appellant.

[11] Because we find the PCRA court did not err in dismissing the PCRA petition as untimely for failure to qualify for the newly-discovered evidence exception, we need not address the second issue raised on appeal, whether the PCRA court erred in finding the petition patently frivolous.