J-S60041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES EARL TROOP | : | |
| | : | |
| Appellant | : | No. 459 WDA 2017 |

Appeal from the PCRA Order March 3, 2017
In the Court of Common Pleas of Crawford County
Criminal Division at No(s): 229-1988

BEFORE: OLSON, DUBOW, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED SEPTEMBER 21, 2017**

Appellant, James Earl Troop, appeals from the order entered in the Court of Common Pleas of Crawford County dismissing his fifth petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, as untimely filed. We affirm.

This Court has previously recounted the factual and procedural history of the Appellant's case.

> On April 14, 1988, Appellant and his accomplice decided to rob a jewelry store. Before the robbery, Appellant stated that he intended to shoot the two men who were inside the store, and that is just what Appellant did. He forced the two men to lie face down upon the floor, and before leaving the store with the stolen jewelry (approximately $37,000.00 worth) and cash, he shot each man two times in the back of his head with a twenty-two caliber pistol from a distance of one or two feet. Miraculously, both men survived, albeit with permanent mental and physical impairments.

_____
* Former Justice specially assigned to the Superior Court.

On April 14, 1988, Appellant was convicted of two counts of [attempted murder], two counts of aggravated assault, two counts of robbery, and one count of criminal conspiracy. On April 7, 1989, Appellant was sentenced to an aggregate sentence of thirty to sixty years of imprisonment....

[The Pennsylvania Superior Court affirmed judgment of sentence and the Pennsylvania Supreme Court denied *allocatur*. A first PCRA petition afforded Appellant no relief, but his second PCRA petition challenging the stewardship of counsel prevailed, and, on May 29, 1996, Appellant was awarded a new trial.

The Court of Common Pleas of Crawford County awarded Appellant a new suppression hearing, which took place on August 15, 1996, but the court denied Appellant's motion on September 19, 1996.] On that same day, Appellant pleaded guilty to the charges *sub judice*.... On November 7, 1996, Appellant was sentenced again to serve an aggregate sentence of thirty to sixty years of imprisonment.

***Commonwealth v. Troop***, No. 02291 WDA 1996, unpublished memorandum at 2-3 (Pa.Super. filed July 7, 1997).

Thereafter, the Pennsylvania Superior Court affirmed judgment of sentence on July 7, 1997, and the Pennsylvania Supreme Court denied *allocatur* on December 10, 1997. Appellant's judgment of sentence therefore became final on or about March 10, 1998.

Since that time, Appellant has filed four prior PCRA petitions, all of which have been dismissed for lack of merit or for failure to file a brief, and this, his fifth PCRA petition, which Appellant filed, *pro se*, on December 29, 2016. In his petition, Appellant alleged there was exculpatory evidence unavailable at the time of trial that subsequently became available. Had such evidence been available, Appellant asserted, he would not have pleaded guilty. On February 1, 2017, the PCRA court issued notice pursuant

to Pa.R.Crim.P. 907(1) of its intent to dismiss Appellant's petition without a hearing. Appellant filed a Motion in Response to the Court's Intent to Dismiss PCRA, but the court denied Appellant's motion and entered its Order of March 3, 2017, dismissing Appellant's petition without a hearing. This appeal followed.

Preliminarily, we must determine whether Appellant's instant PCRA petition was timely filed. *See Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super. 2000). "Our standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation and quotation marks omitted).

The most recent amendments to the PCRA, effective January 19, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

(i) the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)–(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). Further, a petitioner asserting a timeliness exception must file a petition within sixty days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Appellant contends that the PCRA court erroneously dismissed his patently untimely petition[1] where the petition raised a claim qualifying for the newly-discovered facts exception to the PCRA time-bar as delineated in Section 9545(b)(1)(ii). This Court has explained the requirements attendant to a newly-discovered fact claim under Section 9545(b)(1)(ii):

_____

[1] Appellant filed the present PCRA petition over 26 years after his judgment of sentence became final on or about Monday, April 16, 1990, when the thirty-day time period for filing a petition for allowance of appeal with our Supreme Court expired. See 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113.

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. ***Commonwealth v. Bennett***, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. ***Commonwealth v. Carr***, 768 A.2d 1164, 1168 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. ***Commonwealth v. Breakiron***, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001); ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa.Super. 2010), ***appeal denied***, 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. ***Id.*** Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original).

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa.Super. 2015).

In his petition, Appellant asserted that Detective Dominick DiPaolo of the Erie Police Department had recently published a book in which the detective admitted that he contacted Meadville authorities in Crawford County and told them that he suspected Appellant was involved in the robbery and shootings at the Meadville jewelry store. DiPaolo claims in his book that he immediately had Appellant arrested on the Meadville charges. ***See*** *infra*. DiPaolo's "admission," Appellant claimed, proves that his arrest was prompted not by probable cause but by the detective's hunch that Appellant was somehow involved in the robberies.

In Appellant's brief, Appellant argues the following facts were previously unknown to him:

(1)That the arresting officer in this case would publish a book, nearly thirty (30) years later, and basically admit to what this

- 5 -

defendant was alleging at trial, that he was arrested and charged with three counts of robbery over twelve (12) hours prior to any evidence linking this defendant to any robberies! [Detective] DiPaolo also admits in the book that this petitioner was arrested for crimes that happened in Meadville, PA ….

(2)The petitioner raised the claims of being arrested without probable cause and that the arresting officer was framing this petitioner because of his involvement in the Frank Rotunda case. DiPaolo's book is the <u>source</u> of this newly discovered evidence.

(3)In the book DiPaolo is admitting that he contacted the Meadville authorities on the evening of April 14, 1988 and told them that he suspected that this petitioner and his brother was responsible for the robbery and shooting in Meadville. (The book is the source of this petitioners [sic] claim that DiPaolo contacted the Meadville authorities on 4/14/88).

(4)DiPaolo states in the book that he "immediately had this petitioner arrested on the Meadville charges on his own suspicion." (See exhibit #1).

Appellant's brief at 3.

In Appellant's "Exhibit 1," he presents an excerpt from the book co-authored by DiPaolo, entitled "The Unholy Murder of Ash Wednesday: The Stained Life and Rude Times of Mob Wannabe 'Bolo' Dovishaw." As indicated, Appellant claims the excerpt reveals new facts that were previously unknown and unknowable through the exercise of due diligence. The excerpt reads as follows:

DiPaolo was later assigned to investigate a rash of armed robberies. He quickly developed the Troops and their pals as prime suspects. After DiPaolo served search warrants at homes where the Troops were known to stay, the brothers fled town. A short time later, while DiPaolo watched the local evening news, he learned the owner of a Meadville, Pennsylvania, jewelry store was shot, along with a customer, during an armed robbery. After hearing the description of the robbers, the Erie cop

contacted Meadville Police. The robbery M.O. was similar to that used by the Troops. He did not hesitate to arrest the brothers.

Appellant's Exhibit 1 (excerpt from "The Unholy Murder of Ash Wednesday: The Stained Life and Rude Times of Mob Wannabe 'Bolo' Dovishaw," p. 337).

Initially, we address whether Appellant filed the present claim within sixty days of the date the claim could have been presented as he was required to do in order to preserve his claim pursuant to Section 9545(b)(2). The source of Appellant's purported new evidence is Detective DiPaolo's memoir, which was first published on June 27, 2014. Appellant filed the instant PCRA petition on December 29, 2016, over two and one-half years after the book became available to the public.

Appellant baldly alleged in his petition that he first learned of the DiPaolo's book on December 14, 2016. We take judicial notice of the fact that the memoir discussing, *inter alia*, Appellant's arrest has been available for purchase on Amazon.com since June of 2014, and that the Amazon webpage presently offering the book for sale contains numerous reviews from Amazon customers who purchased the book in 2014 and 2015. As Appellant, therefore, failed to plead *and prove* that he filed his petition within 60 days of the date that the memoir became available to him through the exercise of due diligence, he does not qualify for the newly discovered evidence exception. Consequently, we may affirm the order of the PCRA court on this basis.

Even if we were to address the merits of Appellant's claim, it is apparent that the above excerpt does not, as Appellant contends, contain an

admission by Detective DiPaolo that Appellant was arrested prior to the formation of probable cause. The statement "He did not hesitate to arrest the [Troop] brothers" does not describe the timeline leading to Troop's arrest in any detail. At most, DiPaolo offers a generalized, broadly stated summary of Appellant's arrest devoid of any meaningful discussion about the formation of probable cause.

Moreover, the inference Appellant attempts to draw from the excerpt merely duplicates defense evidence previously offered at Appellant's August 15, 1996, suppression hearing. Appellant argues herein that the excerpt shows that DiPaolo and other investigators obtained accomplice Bess Brown's written statement implicating Appellant only after his arrest such that the statement could not have supplied probable cause to support his arrest. However, DiPaolo previously admitted that Brown was arrested after Appellant, N.T. (Suppression Hearing II) 8/15/96 at 36-42, and maintained that probable cause derived from their recovery of bank bags and checks that came out of a robbery occurring in Erie County. N.T. at 42. Additionally, Appellant attaches to his brief both the police report detailing his arrest and a criminal complaint indicating that officers obtained Ms. Brown's implicating statement at a time subsequent to Appellant's arrest. Accordingly, the record establishes that the purported revelation in DiPaolo's memoir was, in fact, previously available to Appellant and utilized by him in prior proceedings. The memoir, therefore, did not provide new evidence but

only a new source of previously known evidence. For this reason, Appellant's claim fails.

Order is AFFIRMED.

Dubow, J. joins the memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017