J-S26044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WILLIAM SANTIAGO :
:
Appellant : No. 1294 MDA 2016

Appeal from the PCRA Order July 8, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0002738-2004

BEFORE:  BOWES, DUBOW, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　　**FILED MAY 26, 2017**

Appellant, William Santiago, appeals from the order entered in the York County Court of Common Pleas dismissing his second Post Conviction Relief Act[1] ("PCRA") petition.  He argues that his petition was timely filed pursuant to the new facts exception to the PCRA.  42 Pa.C.S. § 9545(b)(1)(ii).  We affirm.

A prior panel of this Court summarized the facts and procedural posture of this case as follows:

> On January 13, 2005, a jury convicted Appellant of first degree murder.  On the following day, he was sentenced to life imprisonment.  The conviction stems from the 2004

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

shooting death of sixteen-year-old William Barnes as part of an ongoing altercation between rival drug dealers over distribution territory in Hanover, Pennsylvania. The victim and Appellant's accomplice, William Riley, were street-level drug dealers for Appellant's rival, Kunta King. Appellant enticed Mr. Riley to draw the victim from a motel room, whereupon Appellant forced the victim into an automobile at gunpoint, drove to an alley in York, Pennsylvania, and shot him repeatedly. This Court affirmed the judgment of sentence on July 31, 2006, and our Supreme Court denied allowance of appeal on November 28, 2007. *Commonwealth v. Santiago*, 909 A.2d 887 (Pa. Super. 2006) (unpublished memorandum), *appeal denied*, *Commonwealth v. Santiago*, 937 A.2d 445 ([Pa.] 2007). The United States Supreme Court denied *certiorari* on April 28, 2008. *Santiago v. Pennsylvania*, 533 U.S. 1021(2008).

Thereafter, acting *pro se*, Appellant filed the underlying PCRA petition on December 15, 2008. Counsel was appointed to represent Appellant, and counsel filed an amended PCRA petition. After an evidentiary hearing on June 29, 2009, the PCRA court denied relief.

*Commonwealth v. Santiago*, 1346 MDA 2009, (unpublished memorandum at 1-2) (Pa. Super. Aug. 18, 2010). Appellant appealed, and this Court affirmed. *See id.*

On October 29, 2015, Appellant filed the instant second PCRA petition. The Commonwealth filed a motion to dismiss the PCRA petition. The PCRA court granted the Commonwealth's motion to dismiss the claims raised in the petition with the exception of the issue of the affidavit of Shannon Ritter. *See* Order, 6/28/16, at 1-2. A hearing was held on June 28, 2016. On July 8, 2016 the PCRA court granted the motion to dismiss. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of

errors complained of on appeal and the PCRA court filed a Rule 1925(a)

opinion, based upon its opinion in support of the order granting the

Commonwealth's motion to dismiss the PCRA petition.

Appellant raises the following issues for our review:

> I. Whether the [PCRA] court erred in denying relief when it
> dismissed as untimely the issue of the newly discovered
> evidence of Johnnie Simmons affidavit of September 2015
> concerning his statements to the police?
>
> II. Whether the [PCRA] court erred in denying relief when
> it dismissed as untimely the issues that Attorney [William
> H.] Graff [Jr.] did not present a valid subpoena prior to the
> [c]ourt issuing a warrant for Shannon Ritter and that
> Attorney Graff had an ex parte communication with the
> [c]ourt to get the warrant issued for Shannon Ritter?
>
> III. Whether the [PCRA] court erred in denying relief when
> it dismissed as untimely the issue that the search warrants
> are not part of the case file in the Clerk of Courts Office?
>
> IV. Whether the [PCRA] court erred in denying relief when
> it dismissed as untimely the issue of Shannon Ritter's
> recantation in his affidavit in September 2015?

Appellant's Brief at 4.

We reproduce Appellant's argument in support of his first claim

verbatim:

> It is undisputed that the [PCRA] petition was filed well
> after the one year deadline to file a petition. Appellant
> contends that the circumstances in this case meet the
> exception that the after discovered evidence was unknown
> to him, and he would have been unable to have known
> them [sic] through the exercise of due diligence.
>
> Appellant contends that the testimony of Johnn[ie]
> Simmons would have been able to attack the credibility of
> the investigation of the York City Police Department. Mr.

Simmons had presented a written affidavit to Appellant on September 23, 2015, stating that he never made any statements against Appellant. This testimony if presented to a jury would be able to cast doubt on how the investigation was conducted by the York City Police Department, as well as how the case was prosecuted by the York County District Attorney's Office.

At the time of Appellant's trial, he did not have any reason to question the investigation and prosecution of his case. It was not until Appellant notice [sic] issues with the search warrants not being in the York County Clerk of Courts office that he began to question these issues. Appellant filed his PCRA within 60 days of receiving the affidavit from Mr. Simmons. Given the impact his testimony would have had to a jury, Appellant contends the [PCRA] Court erred in dismissing his PCRA petition.

*Id.* at 8-9.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." ***Commonwealth v. Wilson***, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*) (citation omitted).

A PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one of the exceptions in § 9545(b)(1)(i)-(iii) applies and the petition is filed within 60 days of the date the claim could have been presented." ***Commonwealth v. Copenhefer***, 941 A.2d 646, 648 (Pa. 2007) (citations and footnote omitted).

Jurisdictional time limits go to a court's right or competency to adjudicate a controversy. These limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits. Unlike a statute of limitations, a jurisdictional time limitation is not subject to equitable principles such as

tolling except as provided by statute. Thus, the filing period is only extended as permitted; in the case of the PCRA, the time limitations are extended upon satisfaction of the exceptions found in § 9545(b)(1)(i)-(iii) and timely filing pursuant to (b)(2). As it has been established that the PCRA's time restrictions are jurisdictional, we hold that the period for filing a PCRA petition is not subject to the doctrine of equitable tolling, save to the extent the doctrine is embraced by § 9545(b)(1)(i)-(iii).

*Commonwealth v. Fahy*, 737 A.2d 214, 222 (Pa. 1999).

The three timeliness exceptions are:

(i)     The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)     the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. [*Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007)]. "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" *Id.* Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can

- 5 -

present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

*Bennett*, [ ] 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

***Commonwealth v. Brown***, 111 A.3d 171, 176–77 (Pa. Super. 2015),

*appeal denied*, 125 A.3d 1197 (Pa. 2015) (some citations omitted).

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. **A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence**. This rule is strictly enforced.

***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa. Super. 2010)

(citations omitted and emphasis added).

The PCRA court opined:

> [Appellant] essentially claims that a witness who did not testify presented after-discovered evidence that that he did not make a statement attributed to him by the police. No police officer testified during the course of the trial about anything that proposed witness said. [**See** N.T. PCRA Hr'g., 6/28/16, at 11-12.]
>
>          \*     \*     \*
>
> Accordingly, we will grant the Commonwealth's motion to dismiss a PCRA claim based on that issue.

Order, 6/28/16, at 1.

Appellant contends that the testimony of Johnnie Simmons that "he never made any statements against" him would have had an impact on the jury. Appellant's Brief at 8-9. Appellant has not explained why he could not have obtained the new facts earlier with the exercise of due diligence. **See Brown**, 111 A.3d at 176-77; **Monaco**, 996 A.2d at 1080. We discern no error by the PCRA court. **See Wilson**, 824 A.2d at 333.

Second, Appellant avers the PCRA "court erred in denying relief when it dismissed as untimely the issues that Attorney Graff did not present a valid subpoena prior to the [c]ourt issuing a warrant for Shannon Ritter and that Attorney Graff had an ex parte communication with the [c]ourt to get the warrant issued for Shannon Ritter." Appellant's Brief at 9. In support of this claim, Appellant contends that

> [i]t is clear from the record from the trial that when the warrant was issued for Shannon Ritter as a material witness, no subpoena was shown to the [t]rial [c]ourt, as well that the conversation occurred without Appellant's defense counsel present. Appellant contends that since he still maintains his innocence and with the level of judicial

impropriety that would be clear from the record, it is an exception to the one year time bar.

***Id.*** at 9-10.

A review of the record reveals that this claim does not constitute an after discovered fact. Appellant has not presented a claim that satisfies any timeliness exception pursuant to Section 9545(b)(1)(i)-(iii).[2]

Third, Appellant avers the PCRA "court erred in denying relief when it dismissed as untimely the issue that the search warrants are not part of the case file in the Clerk of Courts Office." Appellant's Brief at 10. His argument in support of this claim is as follows:

> Appellant's family in September of 2015, became aware that the search warrants in his case were not part of the file in the Clerk of Courts Office. Appellant contends without the warrants in the file, there is no way to verify the legitimacy of the warrants. It is clear that Appellant and his attorney were aware of the search warrants, including having a suppression hearing. Appellant contends that due to his claim of innocence and it being a clear miscarriage of justice he would be able to raise this issue past the one year time bar.

***Id.***

Appellant's claim does not satisfy any timeliness exception. ***See*** 42 Pa.C.S. § 9545(b)(1)i)-(iii). Appellant concedes he "and his attorney were

---

[2] We note that on direct appeal this Court found the trial court did not abuse its discretion in permitting Ritter to testify at the time of trial. ***See Commonwealth v. Santiago***, 401 MDA 2005, (unpublished memorandum at 22-23) (Pa. Super. Sept. 25, 2007).

aware of the search warrants, including having a suppression hearing."[3] Appellant's Brief at 10.

Lastly, Appellant contends the PCRA "court erred in denying relief when it dismissed as untimely the issue of Shannon Ritter's recantation in his affidavit in September 2015."[4] Appellant's Brief at 10. In support of this claim, Appellant avers as follows:

> Appellant contends that the [PCRA c]ourt erred in finding that Shannon Ritter's recantation did not meet the burden of newly discovered evidence. Appellant believes that Shannon Ritter's recantation more than establishes by a preponderance of the evidence that it would have changed the outcome of the trial. While Mr. Ritter's testimony was corroborative of other testimony presented by Freddy Goff, Mr. Ritter was a much more credible witness. In the closing argument by Attorney Graff, he stated that Mr. Ritter was the most credible witness, because he did not ask for anything when he provided his statement to police. Mr. Ritter had no motive for Appellant to be able to attack his testimony, whereas Mr. Goff was receiving consideration for his testimony.
>
> While Mr. Ritter could not be clear during the PCRA hearing on which statements would have been hearsay, he was clear that he testified to statement that Appellant never told him. The standard is only by preponderance of evidence that it would have changed the outcome of the

---

[3] On direct appeal, this Court addressed the issue of the legitimacy of the search warrant and determined that it was "validly-issued." *See Santiago*, 401 MDA 2005, (unpublished memorandum at 17) (Pa. Super. 2006).

[4] In the affidavit, Mr. Ritter states as follows: "I write this affidavit to let it be known that the only reason I testified against [Appellant] at his trial on January 2005 was because it was being done under DURESS by ADA William H. Graff." PCRA Petition, 10/29/15, at Ex. "A".

trial. When Mr. Ritter's testimony is put into question it does meet that standard, due to the weight that Commonwealth relied on it in its argument to the jury.

Appellant's Brief at 10-11.

In the case *sub judice*, the PCRA court granted the Commonwealth's motion to dismiss the PCRA petition as to all claims with the exception of Mr. Ritter's testimony. The court stated: "With regard to Shannon Ritter's proposed testimony, at this time we'll deny the Commonwealth's motion to dismiss concerning that particular issue and we'll take testimony on that." Order, 6/28/16, at 2.

The PCRA court opined:

On June 28, 2016, at the hearing held on the instant matter, Ritter testified that he felt like he was under pressure from the District Attorney's Office to testify against Appellant. He felt this way because they had arrested him and told him, he would not be freed until he testified to the statements he herd [sic] Appellant make concerning the homicide. Ritter further explained that Appellant made incriminating statement to him concerning the homicide but that numerous inmates were also talking about the crime and he cannot ascertain which statements Appellant made from statements other inmates made. However, he knows he testified as truthfully as he could and to the best of his ability at trial.

Furthermore, Ritter's testimony at trial was corroborative of other testimony presented by [Frederick] Goff [Jr.] [Goff]. Goff testified that Appellant confessed to killing the victim and told him that "sometimes you got to kill the pawn to get to the king." Goff also testified that Appellant used a (.45) handgun and shot the victim (4-5)times in the back. At trial, Ritter testified that Appellant used a (.45) handgun and shot the victim (4) times in the back. Goff and Ritter gave consistent testimony.

Here, we agree that the statements Ritter made in September 2015 were not available at the time of Appellant's trial and that they have subsequently become available. However, we do not believe that the statements alleged in Ritter's affidavit, not [sic] his testimony which he offered at the June 28, 2016, PCRA hearing in support of his affidavit, would change the outcome of the trial. First, Ritter is not able to establish which statements he made might have been false. Secondly, he stated that he testified as truthfully as he could. Finally, even if Ritter did not testify at trial, Appellant would likely have still been convicted of the homicide because a second witness, Goff, testified to the same statements as Ritter. Therefore, Appellant has not established by preponderance of the evidence that this new evidence would have changed the outcome of the trial. Thus, Appellant is not entitled relief to [sic] based on the PCRA's newly discovered evidence exception to the one-year time bar.

Opinion in Support of Order Granting the Commonwealth's Motion for Dismissal of Defendant's Second Petition for Post Conviction Relief at 4 (citations omitted). We agree no relief is due.

At the PCRA hearing, Mr. Ritter testified, *inter alia*, as follows:

[Counsel for Appellant]: Mr. Ritter, do you recall testifying in this trial as it relates to Mr. Santiago?

A: Yes, I do.

Q: In regards to that, prior to presenting that testimony, you had an opportunity to speak with the District Attorney's Office and provide them a statement; correct?

A: Yes, I provided them a statement.

Q: And then at some point while the trial was going on you were arrested on a bench warrant that was issued?

A: Yes. . . .

- 11 -

I was in Wal-Mart one evening and a family member of mine had called me and asked me where I was at. . . .

Q: And that's how you got arrested on the warrant?

A: Yes, sir. . . .

\*     \*     \*

Q: So once you were taken into custody, can you explain to the Court as far as what did happen and who you had a conversation with?

A: Once I was taken into custody . . . I was transported to York police station, taken downstairs. Attorney Graff was there, a few detectives were there, and the people that apprehended me were there. They made me aware—Prior to my getting there, I didn't know why I was being arrested. But when I got there, you know, it was clear that the trial was going on and they wanted me to testify. At that time I made it clear that I didn't want to testify and as to why I didn't want to testify.

Q: Why didn't you want to testify?

A: Honestly, sir, coming forward and giving a statement was one of the hardest things I've ever done. . . .

But after the fact of my giving the statement, I realized that some of the things that I testified to, well, some of the things that I said in the statement weren't—they were told to me, but they weren't all told to me by [Appellant]. . . .

Q: And did you explain that to Attorney Graff and the other members of the law enforcement that were there when you were taken into custody?

A: I did mention that.

Q: And what was there response as far as to that?

A: That I should just testify to what I told them.

- 12 -

* * *

Q: Did they make any statements to you if you didn't testify what would happen?

A: That I would remain in jail until I did because it was an Order of Court that I testify.

* * *

Q: At the time that you testified, did you feel pressure from the District Attorney's Office to testify to the statement you previously gave?

A: Absolutely.

* * *

Q: When you testified at trial, did you testify truthfully?

A: To the best of my knowledge.

Q: Fair enough.  Mr. Ritter, have you talked to [Appellant] in the last say five years?

A: Once.

Q: What was the nature of that contact?

A: This was just recently.  I went to see him at the prison.

* * *

Q: This was after you filed your affidavit?

A: Yes, ma'am.

Q: What did you and he talk about?

A: I just went to apologize to him.

Q: For telling the truth?

A: No, ma'am. For possibly—I'm not going to say not telling the truth, but for possibly, you know, prejudicing him by saying things that he may not have told me.

Q: But again you agree that there are things he did tell you?

A: Yes, ma'am.

Q: And there are things about the crime?

A: Yes.

Q: And there were things that implicated his guilt in it?

A: Yes, ma'am.

* * *

The Court: . . . Did you lie under oath during the trial?

A: No, sir. I told the truth to what I believed it to be. I didn't lie. I just—I'm not sure what he told me and what he didn't because I was given a lot of information.

The Court: From various sources?

A: At the prison at the same time, yes, sir.

The Court: When you were in prison?

A: When I was having the conversations with [Appellant], there was also other people there in the prison that had things to do with the case and people were just talking about things. . . .

N.T., 6/28/16, at 22-26, 28, 32-34.

At trial, however, Goff testified, *inter alia*, as follows:

[The Commonwealth]: . . . Did [Appellant] tell you what gun he used on Billy Barnes?

- 14 -

A: Yes, he did.

Q: What did he tell you he used?

A: .45.

Q: Did he tell you how many times he shot him?

A: Yes.  Four or five times.

Q: Where did he shoot him?

A: In the back.

Q: And all this was before the autopsy was done or any forensic examinations was [sic] done or anything else?

A: Yes.

Q: This was within a day or so of the shooting?

A: Yes.

N.T., 1/12/05, at 630-31.

The PCRA court found that, even if Ritter did not testify at trial, Appellant would likely have still be convicted of the homicide based upon Goff's testimony.  We find the PCRA court's determination that Appellant is not entitled to relief is supported by the record.  **See** 42 Pa.C.S. § 9543(a)(2)(vi); **Brown**, 111 A.3d at 176-77.  We discern no legal error in the PCRA court's dismissal of Appellant's PCRA petition.  **See Wilson**, 824 A.2d 331.

Accordingly, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017