J-S59007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTONIO MOLINA, | |
| Appellant | No. 2602 EDA 2016 |

Appeal from the PCRA Order Entered August 1, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005971-2000

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 15, 2017**

Appellant, Antonio Molina, appeals from the post-conviction court's order denying, as untimely, his fourth petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

This Court previously summarized the facts and procedural history of Molina's case, as follows:

> In January 1993, Molina, the leader of a small drug ring in Philadelphia, hired a "hit man" to murder the victim, whom Molina believed had robbed and shot him a few months earlier. One of the individuals who had sold drugs for Molina, Mariano De Los Santos ("De Los Santos"), testified on behalf of the Commonwealth at Molina's trial. Specifically, De Los Santos testified to overhearing Molina's negotiations with a hit man concerning the planned murder. Additionally, Ramon Guaba

_____

[*] Former Justice specially assigned to the Superior Court.

("Guaba"), a Commonwealth witness, testified to overhearing a similar conversation. The victim was shot to death on January 21, 1993, and Molina paid the hit man $5,000 after confirming that the victim was dead.

In September 2002, the matter proceeded to a non-jury trial, at the close of which the trial court found Molina guilty of first-degree murder and criminal conspiracy. The trial court sentenced Molina to life in prison. This Court affirmed the judgment of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Molina*, 847 A.2d 759 (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, 864 A.2d 529 (Pa. 2004).

In the following years, Molina filed two *pro se* PCRA Petitions, both of which were dismissed, and the dismissals were affirmed on appeal. *See Commonwealth v. Molina*, 932 A.2d 259 (Pa. Super. 2007) (unpublished memorandum), *appeal denied*, 937 A.2d 444 (Pa. 2007); *Commonwealth v. Molina*, 60 A.3d 847 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 63 A.3d 775 (Pa. 2013).

*Commonwealth v. Molina*, No. 2347 EDA 2014, unpublished memorandum at 1-2 (Pa. Super. filed March 30, 2015).

On August 16, 2013, Molina filed a third, *pro se* PCRA petition, which was subsequently denied by the PCRA court as being untimely filed. This Court affirmed on appeal, and our Supreme Court denied Molina's subsequent petition for allowance of appeal. *See Commonwealth v. Molina*, 120 A.3d 1065 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 120 A.3d 1065 (Pa. 2015).

On August 31, 2015, Molina filed his fourth, *pro se* PCRA petition, which underlies the present appeal. On April 8, 2016, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Molina's petition, to which Molina filed a timely response. Nevertheless, on August 1, 2016, the PCRA

court issued an order, and accompanying opinion, dismissing Molina's petition as being untimely filed.

Molina filed a timely, *pro se* notice of appeal. It does not appear that the PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Molina raises one issue for our review:

> The [PCRA] court abused it's [*sic*] discretion when it dismissed [Molina's] PCRA petition that presented solid proof that [Molina] was convicted as a result of a deal that the "star" witness made with the District Attorney [*sic*] Office to testify against [Molina] to alleged facts that were fabricated and manufactured for the sole purpose of winning a conviction against the petitioner. The solid evidence is attached to the PCRA at issue here. There cannot be any excuse for dismissing the PCRA petition in this instant matter.

Molina's Brief at 3A (unnecessary capitalization and emphasis omitted).

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Molina's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007) (stating PCRA time limitations implicate our jurisdiction and may not be altered or disregarded to address the merits of the petition). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of

sentence becomes final, unless one of the following exceptions set forth in

42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> > (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
> >
> > > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> > >
> > > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> > >
> > > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).  Any petition attempting to invoke one of

these exceptions "shall be filed within 60 days of the date the claim could

have been presented."  42 Pa.C.S. § 9545(b)(2).

Here, Molina does not dispute that his current PCRA petition is facially

untimely.  In an effort to overcome the jurisdictional time-bar, Molina argues

that he meets the after-discovered fact exception of section 9545(b)(1)(ii).

His claim is premised on a sworn affidavit from De Los Santos, in which De

Los Santos states, in pertinent part and verbatim, the following:

> I testified on a trial in the commonwealth of the city of Pennsylvania, United States of America, in the month of

September 2002, against of **Mr. Antonio Molina**. In said testimony I was accompanied by the defendant ROMAN GUABA, which has secured 'me that if we testify against of ANTONIO MOLINA, our sentence were going to be reduce and soon we will go to our house in our country, the prosecution office in charge of the trial promise.

Today free in my country, I feel in jail because of my conscience, because I know that ROMAN GUABA and I LIE just to get out of jail. Before the man and before God I certify that I lie. I regretted and I swear that the testimony against of Mr. ANTONIO MOLINA issue on September 2002, was false, therefore I request forgiveness to God, to Molina and to the American Justice.

I am sending this testimony to **Antonio Molina**….

In the city of Santo Domingo, Dominican Republic, at the ten (10) days of May 2015.

Molina's PCRA Petition, 8/31/15, at Appendix D (emphasis in original).

Preliminarily, we conclude that Molina raised his claim regarding De Los Santos's affidavit within 60 days of when he could have first presented it following his receipt of that affidavit. Molina attached to his PCRA petition mail forms indicating that De Los Santos's affidavit was mailed from the Dominican Republic – where De Los Santos resides – on May 26, 2015. **See** Molina's PCRA Petition at Appendix C. In May of 2015, Molina's appeal from the denial of his third PCRA petition was still pending; specifically, Molina was awaiting a decision by our Supreme Court on his petition for allowance of appeal from this Court's March 30, 2015 decision. It was not until August 10, 2015, that our Supreme Court denied Molina's petition for allowance of appeal. Molina then filed his current PCRA petition on August 31, 2015, within 60 days of when he could have first done so. **See Commonwealth**

*v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (holding "that when an appellant's PCRA petition is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or the expiration of time for seeking such review"; if the subsequent petition is not filed within one year of the date that the judgment of sentence became final, it "must also be filed within 60 days of the date of the order which finally resolves the previous PCRA petition, because this is the first 'date the claim could have been presented'") (footnote omitted; quoting 42 Pa.C.S. § 9545(b)(2)).[1]

Nevertheless, we are compelled to conclude that Molina has not met the after-discovered fact exception based on De Los Santos's affidavit. That exception "has two components, which must be alleged and proved." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015).

> Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

---

[1] We recognize that Molina also attempted to assert his claim based on De Los Santos's affidavit **before** our Supreme Court denied his petition for allowance of appeal. In particular, Molina attached to his current PCRA petition evidence that, after he received De Los Santos's affidavit, he filed with our Supreme Court a "Petition for Leave of the Court to Allow New Evidence[,]" asking the Court to consider the affidavit. Our Supreme Court denied that petition on August 10, 2015, in the same order denying Molina's petition for allowance of appeal. **See** Molina's PCRA Petition at Appendix G (*Per Curiam* order by our Supreme Court).

*Id.* at 176-77 (citation omitted). This Court has declared "that the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." *Commonwealth v. Burton*, 121 A3d 1063, 1070 (Pa. Super. 2015) (*en banc*). The *Burton* panel further held that "due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for relief. We shall strictly enforce this requirement." *Id.* at 1071 (citations omitted).

Here, we are constrained to conclude that Molina did not plead sufficient facts to demonstrate that he acted with due diligence in obtaining De Los Santos's affidavit. In support of this conclusion, we stress that in Molina's first PCRA petition filed in October of 2004, he presented an affidavit from Alfredo Colon, De Los Santos's former cellmate, in which Colon stated that, prior to Molina's trial, De Los Santos told Colon that he (De Los Santos) planned to falsely implicate Molina in the murder. On appeal from the PCRA court's denial of this petition, we concluded that Colon's statement was inadmissible hearsay and, thus, we affirmed. *See Commonwealth v. Molina*, No. 1365 EDA 2006, unpublished memorandum at 9-11 (Pa. Super. filed July 17, 2007).

Then, on August 16, 2013, Molina filed his third PCRA petition, again alleging newly discovered evidence involving De Los Santos's false testimony. Specifically, Molina presented a document that he had obtained from the U.S. Citizenship and Immigration Services (USCIS), which

ostensibly memorialized statements made by De Los Santos to a USCIS employee. De Los Santos allegedly told the employee that he knew nothing about the murder, and that he had only told the police what they wanted to hear. De Los Santos also told the USCIS employee that Guaba told him what to say to the police. The PCRA court denied Molina's petition, stressing that he did not submit any affidavit from De Los Santos or Guaba indicating that they were recanting their testimony. Again, this Court affirmed. *See Commonwealth v. Molina*, No. 2347 EDA 2014, unpublished memorandum (Pa. Super. filed March 30, 2015).

Now, Molina again asserts that De Los Santos fabricated his trial testimony, and that he has new evidence to prove this fact – De Los Santos's affidavit. The Commonwealth, however, contends that Molina has

> failed to satisfy his burden of establishing that he acted with due diligence in obtaining his purported 'new facts.' [Molina] has been presenting claims that [] De Los Santos recanted for over a decade. This provided [Molina with] ample opportunity, and motivation, to seek out De Los Santos and request his assistance, either on his own, through friends and family, or through two attorneys who represented him in litigating his first and [third] PCRA petitions. Due diligence does not permit a defendant to sit back and wait for evidence to appear; he must instead "take reasonable steps to protect his own interests." *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010). Yet [Molina] has failed to set forth *any* specific steps he or his representatives took to contact [] De Los Santos. [Molina's] inaction does not reflect reasonable diligence.

Commonwealth's Brief at 15-16 (emphasis in original; some citations omitted).

We are compelled to agree with the Commonwealth. Molina clearly knew, as early as 2004, that De Los Santos admitted that he fabricated his trial testimony. Additionally, in regard to the alleged deal between De Los Santos and the Commonwealth, De Los Santos admitted at Molina's trial that he hoped his cooperation with the Commonwealth would earn him an early release from an unrelated prison sentence he was then serving. *See Commonwealth v. Molina*, No. 3188 EDA 2002, unpublished memorandum at 8. De Los Santos's testimony should have at least triggered Molina's suspicion that De Los Santos had received a deal from the Commonwealth in exchange for his testimony. Despite Molina's knowing about De Los Santos's possible deal and recantation as early as 2002 and 2004, respectively, Molina did not produce an affidavit from De Los Santos until 2015.

Problematically, Molina did not explain in his PCRA petition, nor does he discuss on appeal, what *specific* efforts he took to obtain De Los Santos's affidavit during this lengthy time period. For instance, in Molina's petition, he made bald assertions that he "diligently tried to have [De Los] Santos contacted … for the sole purpose of telling the truth. But [De Los] Santos has consistently refused to engage in 'any' conversation or in any communication with either [Molina] or his representatives." Molina's PCRA Petition, 8/31/15, at 3-4. Molina did not state *when* he or his 'representatives' attempted to contact De Los Santos, *how* they tried to do so, or *who* specifically attempted to communicate with De Los Santos on his behalf.

Molina's most developed discussion of his attempts to contact De Los Santos was set forth in his response to the PCRA court's Rule 907 notice, in which Molina stated:

I was never able to obtain [De Los] Santos's retraction/affidavit from him. I had <u>no</u> contact with him. I am in prison and I can't make phone calls to him. I took a chance and I kept asking/begging people to "try" and contact [De Los] Santos and to ask him if he would tell the truth. I had heard a rumor that he had turned his life over to JESUS and was a devoted follower of JESUS'S teachings and a devout Christian. I kept trying to get someone – anyone – to please contact him and ask him to tell the truth, about this case. []Finally, I was able to get some help. People who believed that I was telling the truth that I am actually innocent and was wrongfully convicted. I had nothing to do with the murder of the decedent. <u>NOTHING AT ALL!</u>

Remember, for years I was trying to get someone to help me. I was bankrupted because of my arrest and conviction. Since coming to prison, I have been a … WARD of the Commonwealth. BROKE – and A PAUPER. I had no way of hiring someone to travel to the Dominican Republic and contact [De Los] Santos. I am in prison. I am alone here and in spite of all that I never stopped trying to get someone to help me and for someone to go to [De Los] Santos and ask him to "just tell the truth" – <u>nothing more and nothing less.</u>

…

Finally, I was able to get help and now [De Los] Santos was contacted and he provided an affidavit.

Molina's Response to Rule 907 Notice, 6/20/16, at 3-4 (emphasis in original).

Again, Molina at no point clarified, in his Rule 907 response, precisely when he heard the 'rumor' that De Los Santos had become a Christian and was now willing to recant; who tried to contact De Los Santos on Molina's behalf, how they attempted to do so, and when those efforts were made;

- 10 -

and/or who was finally able to convince De Los Santos to draft the affidavit, and when that communication occurred. Molina also does not offer such information in his brief to this Court.

Without a more detailed explanation of exactly what efforts Molina took over the last decade to obtain De Los Santos's affidavit - and further specifics about how he was finally able to do so - we simply cannot conclude that Molina exercised due diligence in obtaining that new evidence. Therefore, Molina's claim that he has satisfied the timeliness exception of section 9545(b)(1)(ii) fails.

Order affirmed.

Judge Ott joins this memorandum.

Justice Fitzgerald notes his dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2017