J-S11036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC SMITH | : | |
| | : | |
| Appellant | : | No. 2403 EDA 2022 |

Appeal from the PCRA Order Entered August 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012423-2007

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED JULY 28, 2023**

Appellant, Eric Smith, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. On July 31, 2007, the Commonwealth charged Appellant, then 16 years old, with murder and related offenses. On September 9, 2008, a jury convicted Appellant of first-degree murder, conspiracy to commit murder, robbery, possessing an instrument of crime ("PIC"), and other violations of the Uniform Firearms Act. A prior panel of this Court summarized the facts adduced at the jury trial as follows:

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Terrence Washington, Appellant's friend who witnessed the shooting testified that on July 28, 2007, he was with Appellant and their friend Sidney Dyches at Dyches' house. The witness and Appellant left and they rode on Appellant's bicycle to the trail in Tookaney Creek Park. They were there about a half hour when a young man rode past on a dirt bike. Without any provocation, Appellant pulled out a silver gun and shot the rider on the bike. When that happened, Washington grabbed Appellant's bicycle and rode off. As he was riding away, Washington heard two or three more shots. Washington rode home, saw Appellant's brother, and gave him Appellant's bicycle. About an hour later, Washington again saw Appellant who told him, "Don't tell nobody about this." About a day or two later, the witness again saw Appellant riding the dirt bike that Washington saw the victim riding.

The victim, fifteen and a half year old Luis Navarro received a Kawasaki dirt bike from his parents as a gift for receiving good grades just four days before he was killed. He died from three gunshot wounds to his back. All the shots were from further than two feet away. The victim was found dead at the scene by two of his friends. The dirt bike was not with the body.

Appellant boasted to two of his friends that he had killed the victim and stolen the dirt bike. Sixteen year old Sidney Dyches testified that he met with Appellant shortly after the shooting. Appellant had the dirt bike which he said he got "from Whitaker." They watched the news on television and saw the story about the dirt bike killing. When they saw the story, Appellant said, "The news was lying." When questioned, Appellant admitted to killing the victim and stealing the dirt bike. However, he said the shooting was an accident.[2] Appellant then told Dyches that he needed

---

[2] Specifically, Dyches testified that Appellant said he had been on the trail when he heard the victim coming on his dirt bike, and that Appellant got in front of the victim, pulled his gun off his hip, and pointed it at the victim. (*See* N.T. Trial, 9/4/08, at 88). Appellant then stated that the victim tried to smack the gun out of his hand which caused Appellant to accidentally shoot him in the stomach. (*Id.*) Appellant then continued by stating that "the young man
*(Footnote Continued Next Page)*

to get the dirt bike out of his house and Dyches allowed Appellant to store the bike in his garage. Appellant then showed Dyches the murder weapon and told him that he needed to get rid of it. Dyches also allowed Appellant to store that in his house. The gun was eventually recovered from a freezer in Dyches' garage.

Fifteen year old Rahyle Lawrence testified he was friends with Appellant and with Sidney Dyches. On the day of the shooting, he spoke with Appellant, and Appellant admitted to shooting the victim and taking his dirt bike. He told Lawrence that Terrence was with him and that Terrence had left after Appellant fired the first shot. Appellant showed Rahyle Lawrence the dirt bike and the murder weapon.

*Commonwealth v. Smith*, No. 3156 EDA 2008, *1-2 (Pa.Super. filed Oct. 2, 2009) (unpublished memorandum), *appeal denied*, 606 Pa. 685, 997 A.2d 1177 (2010) (quoting Trial Court Opinion, 5/13/09, at 3-4).

Procedurally, the court sentenced Appellant on October 24, 2008, to life imprisonment for first-degree murder and imposed lesser terms of imprisonment for the other offenses. On October 2, 2009, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied his petition for allowance of appeal on July 7, 2010. *See id.*

On May 24, 2018, the court granted Appellant resentencing relief under *Miller v. Alabama* and *Montgomery v. Louisiana*.[3] Meanwhile, Appellant

---

sped off and, then, out of panic, [Appellant] shot him again, because he was scared." (*Id.* at 89). Appellant also described to Dyches that he witnessed the victim coughing up blood. (*Id.* at 90).

[3] *See Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016).

had filed other PCRA claims, which the court denied. On April 8, 2022, the court resentenced Appellant to 23 years' imprisonment to life for murder and imposed lesser concurrent terms of imprisonment for the other offenses.

On May 2, 2022, Appellant filed the current, serial PCRA petition. Appellant filed an amended PCRA petition on June 7, 2022. In his petitions, Appellant attempted to invoke the "newly-discovered facts" exception to the PCRA's time-bar. Specifically, Appellant claimed that Michael D. Pomerantz, Esquire (an attorney associated with PCRA counsel's law firm) conducted a phone interview with Dyches on June 2, 2022, during which Dyches recanted his trial testimony and revealed that Detective James Pitts had threatened and coerced Dyches' testimony. Dyches told counsel that Detective Pitts routinely picked up Dyches at school and provided him with details necessary to fabricate his testimony against Appellant. Appellant submitted a declaration from Attorney Pomerantz confirming these events.

Appellant further alleged that Detective Pitts, who had been involved in Appellant's investigation, used improper tactics to obtain a coerced statement from Dyches, which led Dyches to give false testimony against Appellant at trial. Appellant cited a Philadelphia Inquirer article detailing charges against Detective Pitts for misconduct in other cases. Appellant claimed that he had no reason to believe sooner that Dyches would come forward and reveal that his statement to Detective Pitts had been coerced. Likewise, Appellant maintained that he had no reason to believe sooner that Detective Pitts had

conducted an interview with Dyches that was unconstitutional. Appellant sought an evidentiary hearing at which time he would present testimony from Dyches and Attorney Pomerantz.

The PCRA court held an evidentiary hearing on July 6, 2022. Appellant and Dyches testified at the PCRA hearing.[4] On August 25, 2022, the court denied PCRA relief. Appellant timely filed a notice of appeal on September 19, 2022. The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises two issues for our review:

> Did the PCRA court abuse its discretion in failing to find the testimony of Sidney Dyches to be credible when the witness testified in a manner that suggested his veracity and when he had no interest in the outcome of the case?

> Did the PCRA court commit an error of law in failing to find prejudice when the testimony of Sidney Dyches included stalking, intimidation, threats, and other coercion that would not only have impeached the state's star witness, but also undermined confidence in the trial result?

(Appellant's Brief at 2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d

---

[4] Attorney Pomerantz represented Appellant at the PCRA hearing.

319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

In his issues combined, Appellant argues that Dyches recanted his trial testimony implicating Appellant in the murder. Appellant insists that Dyches' testimony was credible and would lead to a different outcome at trial. Specifically, Appellant highlights Dyches' testimony at the PCRA hearing that Appellant never confessed to Dyches that Appellant killed Victim. Additionally, Appellant emphasizes Dyches' testimony at the PCRA hearing that Dyches did not read or understand the content of the statement he signed at the police station, which included Appellant's alleged confession to him. Appellant further maintains that Dyches has now denied seeing Appellant put the gun in Dyches' freezer. Appellant contends that police threatened Dyches to implicate Appellant in the murder. Appellant asserts that he only learned of Dyches' recantation after resentencing in this case through Dyches' brother, who was incarcerated with Appellant, and that Appellant could not have discovered this information sooner with the exercise of due diligence. Appellant acknowledges that Dyches has not recanted his trial testimony in full, but Appellant suggests that the portion of Dyches' recantation testimony

implicating Appellant in the murder would have changed the outcome of trial.[5] Appellant concludes he has satisfied the "newly-discovered facts" exception to the PCRA time-bar, and presented a successful claim of after-discovered evidence on the merits, such that this Court should grant a new trial. We disagree.

The timeliness of a PCRA petition is a jurisdictional requisite. **Commonwealth v. Zeigler**, 148 A.3d 849 (Pa.Super. 2016). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The statutory

_____

[5] Appellant claims the evidence against him at trial was not overwhelming, particularly where witness Terrence Washington had pending criminal charges against him and where witness Rahyle Lawrence later recanted his testimony. (**See** Appellant's Brief at 17-18). On this latter point, we note that Appellant submitted an affidavit from Lawrence in earlier proceedings in which Lawrence purports to recant his trial testimony. The Lawrence affidavit is dated November 27, 2013, and was appended to pro se filings while Appellant was represented by counsel. The prior counseled PCRA filings do not appear to include a claim for relief based on Lawrence's recantation. In any event, on September 17, 2019, Appellant abandoned all pending claims unrelated to his request for sentencing relief under **Miller**. On October 14, 2021, Appellant then sought to reinstate his earlier claims. The court construed Appellant's October 14, 2021 filing as a subsequent untimely PCRA petition, for which Appellant failed to plead or prove a timeliness exception applied. The court denied PCRA relief concerning the October 14, 2021 filing on February 17, 2022. Appellant did not appeal that decision.

exceptions to the PCRA time-bar allow very limited circumstances to excuse the late filing of a petition; a petitioner must also assert the exception within the time allowed under the statute.  42 Pa.C.S.A. § 9545(b)(1) and (b)(2).

To satisfy the "newly-discovered facts" timeliness exception set forth in Section 9545(b)(1)(ii), a petitioner must demonstrate that "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015), *appeal denied*, 633 Pa. 761, 125 A.3d 1197 (2015).  Due diligence requires the petitioner to take reasonable steps to protect his own interests.  *Commonwealth v. Carr*, 768 A.2d 1164 (Pa.Super. 2001).  A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence; this rule is strictly enforced.  *Commonwealth v. Monaco*, 996 A.2d 1076 (Pa.Super. 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011).

To obtain relief on a substantive after-discovered-evidence claim under the PCRA once jurisdiction is established, a petitioner must demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.  *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586 (2007).  *See also Commonwealth v. Small*, 647 Pa. 423, 189 A.3d 961 (2018) (discussing quality of proposed "new evidence"

and stating new evidence must be of higher grade or character than previously presented on material issue to support grant of new trial).

When considering a claim involving recanted testimony, "[t]he well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion[.]" **Commonwealth v. Loner**, 836 A.2d 125, 135 (Pa.Super. 2003) (*en banc*), *appeal denied*, 578 Pa. 699, 852 A.2d 311 (2004) (quoting **Commonwealth v. Mosteller**, 446 Pa. 83, 88-89, 284 A.2d 786, 788 (1971)). "Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury." (**See id.**)

Instantly, this Court affirmed Appellant's judgment of sentence on October 2, 2009, and our Supreme Court denied his petition for allowance of appeal on July 7, 2010. Thus, Appellant's judgment of sentence became final on October 5, 2010, after expiration of the time to file a petition for writ of *certiorari* in the United States Supreme Court. **See** U.S.Sup.Ct.R. 13 (stating petitioner has 90 days to file petition for writ of *certiorari* in U.S. Supreme Court). **See also** 42 Pa.C.S.A. § 9545(b)(3). Thus, Appellant had until October 5, 2011, to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). Appellant filed the current PCRA petition on May 2, 2022, which

is facially untimely.[6]

Appellant now invokes the "newly-discovered facts" exception, claiming that he did not learn about Dyches' recantation testimony until the end of April or the beginning of May 2022, following his resentencing, when Dyches' brother approached Appellant while they were both incarcerated at SCI Phoenix. During that interaction, Dyches' brother informed Appellant that Dyches had been trying to contact Appellant's family because Dyches wanted to recant his trial testimony. Dyches subsequently recanted to Attorney Pomerantz during the phone interview. Appellant insisted that he could not have learned of Dyches' recantation testimony sooner with the exercise of due diligence, because Dyches had not recanted his testimony earlier out of fear that he would not have been believed. Dyches alleged that he came forward with his recantation only after learning about Detective Pitts' police misconduct in other cases, after which Dyches thought his recantation might be believed by authorities. Under these circumstances, the PCRA court decided that Appellant met the proffered timeliness exception. (*See* PCRA

---

[6] We recognize that the court resentenced Appellant under ***Miller*** and its progeny on April 8, 2022. Nevertheless, because Appellant is not challenging any aspect of his new sentence, for purposes of a PCRA timeliness analysis, we use the date when Appellant's original judgment of sentence became final. ***See Commonwealth v. McKeever***, 947 A.2d 782, 785 (Pa.Super. 2008) (explaining that successful PCRA petition does not "reset the clock" for calculation of finality of judgment of sentence for purposes of PCRA where relief granted neither restored petitioner's direct appeal rights nor disturbed his conviction but affected only his sentence).

Court Opinion, filed 8/25/22, at 9).

Nevertheless, our review of the record shows that Appellant was aware of Lawrence's recantation in 2012. (*See* N.T. PCRA Hearing, 7/6/22, at 17). In his affidavit, Lawrence stated that he was forced by detectives to give false testimony about Appellant and that Lawrence just did "what the detectives told [him] to do because [they] coerced [him] into being less than truthful." (*See* Lawrence Affidavit, dated 11/27/13, at 1). Additionally, in an earlier PCRA petition filed on February 27, 2019, Appellant alleged that "[a]ll of the suspects [including Dyches] were juveniles who were subjected to coercive interrogating tactics, without the presence of parents and/or legal guardians." (*See Pro Se* PCRA Petition, filed 2/27/19, at 2).

In light of Lawrence's alleged recantation based on coercive police tactics and Appellant's prior allegations that police coerced statements from Dyches and others, we cannot agree with the PCRA court's reasoning that Appellant could not have discovered Dyches' recantation sooner with the exercise of due diligence. When questioned on this matter at the PCRA hearing, Appellant claimed that after Lawrence recanted, Appellant "thought that once I got [Lawrence's recantation], my attorneys would, you know, take it more serious and try to reach out to see if there was anything there [regarding Dyches]; but I never had an attorney, you know, try to go any further." (N.T. PCRA Hearing at 16-17). However, "[d]ue diligence requires the petitioner to take reasonable steps to protect his own interests." *See*

*Carr, supra*. Appellant does not explain why he could not have reached out to Dyches in the decade between learning of Lawrence's recantation and filing the current PCRA petition to inquire whether the police had also coerced Dyches' testimony. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Brown, supra*; *Monaco, supra*.

Even if Appellant could satisfy the timeliness exception, the PCRA court decided that Appellant could not succeed on his substantive claim of after-discovered evidence. Specifically, the court found Dyches' testimony at the PCRA hearing incredible. In rejecting Dyches' testimony, the PCRA court highlighted that Dyches' PCRA hearing testimony was not only at odds with Dyches' trial testimony but also conflicted with the testimony of Dyches' mother presented at trial. (*See* PCRA Court Opinion, 8/25/22, at 10). Further, Dyches claimed at the PCRA hearing that Detective Pitts coerced his statement to police, but the court noted that Detective Pitts was not the detective who took Dyches' statement.[7] (*See id.*) Significantly, Dyches also admitted at the PCRA hearing that Detective Pitts did not provide him with false information regarding Appellant, in contrast to what Dyches had told Attorney Pomerantz in the phone interview. *Compare* (Declaration of Attorney Pomerantz, filed 6/7/22, at 1) *with* (N.T. PCRA Hearing, 7/6/22, at 124). Rather, at the PCRA hearing, Dyches conceded that Detective Pitts told

---

[7] Detective Glenn Cummings took Dyches' statement to police. Detective Pitts apparently had walked in and out of the room a few times during the interview.

Dyches to "do the right thing[.]" (*See id.*)

The PCRA court further found that any attempts by law enforcement to ensure that Dyches would appear at trial did not constitute threats or coercion. Rather, "detectives properly informed Dyches that he could be arrested if he failed to appear after being served with a subpoena." (*See* PCRA Court Opinion at 11).

Further, the PCRA court decided that Dyches' proffered recantation testimony would have been unlikely to compel a different verdict, in light of the overwhelming evidence of Appellant's guilt presented at trial. (*See id.*) The court explained:

> Terrence Washington testified that he witnessed [Appellant] pull out a gun and shoot the decedent in the back. The five fired cartridge casings ("FCCs") recovered from the scene and the two bullets recovered from decedent's body were determined to have been fired from the gun found in Dyches' freezer. Rahyle Lawrence testified that [Appellant] admitted to shooting the decedent, told him Terrence Washington was with him, and showed him the dirt bike and the gun he used to shoot the decedent. Given that the evidence overwhelmingly established [Appellant's] guilt even without Dyches' testimony, [Appellant] cannot establish prejudice based on the alleged suppression of Dyches' claim that his statement and testimony were false and coerced.
>
> Although Dyches claimed that [Appellant] never confessed to the murder and that he never saw the gun in the freezer, Dyches acknowledged that the testimony regarding [Appellant] placing the decedent's dirt bike in the garage was true. Therefore, the evidence at trial would have shown that [Appellant] possessed the decedent's bike in the days following the murder, and he placed it in Dyches' garage, and that he was in Dyches' garage shortly before police found the murder weapon in the freezer. Additionally,

- 13 -

> Dyches testified at trial that the detectives who took his statement told him that he could be charged with murder if he did not cooperate with them. Despite being informed about this, the jury still found [Appellant] guilty.

(PCRA Court Opinion at 11-12) (internal citations omitted).

We are bound by the PCRA court's credibility determination rejecting Dyches' testimony as incredible, which is supported by the record. *See Dennis, supra*. *See also Loner, supra*. As well, the record supports the PCRA court's analysis that Appellant cannot establish that Dyches' recantation testimony would have likely compelled a different verdict, necessary to satisfy the after-discovered-evidence test. *See Small, supra*; *Washington, supra*. Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023