J-S23044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
QUENTIN M. SALMOND :
:
Appellant : No. 3037 EDA 2022

Appeal from the PCRA Order Entered November 23, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009615-2012

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED AUGUST 24, 2023**

Appellant, Quentin M. Salmond, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which denied as untimely his second petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court set forth the relevant facts of this case as follows:

> On April 12, 2008, at about 12:30 p.m., Joan Hill was working at an insurance office located at 5637 Chew Avenue when she saw a blue Lincoln town car parked with the engine running on Woodlawn Avenue. A man, later identified as [Appellant], dressed in women's Muslim clothing exited the vehicle. Hill believed the man was going to rob Skyline Restaurant, located around the corner, so she called 9-1-1 and gave the license plate number of the vehicle.
>
> At around noon that day, Kerron Denmark and Kenneth

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Wiggins went to Skyline Restaurant and Wiggins ordered food. Immediately after they left the restaurant with Wiggins carrying his food, a man approached them asking them for marijuana. As Denmark and Wiggins were walking down the street someone yelled "don't' f'ing move." Denmark heard gunshots and ran away.

On April 12, 2008, at 12:44 p.m., while on routine patrol, Police Officer Christopher Mulderrig was flagged down by a man on the street and told there had been a shooting about two blocks away. When Officer Mulderrig arrived at 5643 Chew Avenue, he observed a male, later identified as Wiggins, lying in the street with a gunshot wound to his chest. Wiggins subsequently died from this gunshot to his chest.

After the murder, Detective Thorsten Lucke recovered surveillance video from Skyline Restaurant. The surveillance video showed Wiggins and Kerron Denmark enter Skyline Restaurant. While the men are inside the restaurant, a vehicle drove by on Chew Avenue and turned left at the corner. Co-Defendant Jamil Banks and [Appellant], wearing women's Muslim clothing, emerge from the area where the car had turned from Chew Avenue. [Appellant] and Banks walked towards Skyline Restaurant. [Appellant] stopped in an alley while Banks enters the restaurant. Banks buys a bottle of soda, leaves the restaurant, and stood with [Appellant] in the alley, out of sight of the camera. After Wiggins gets his food, he and Demnark left the restaurant and walked down the street. Banks followed closely behind Wiggins and Denmark while [Appellant] followed farther back. [Appellant] and Banks confronted Wiggins and Demnark and Wiggins falls to the ground. Quickly thereafter everyone ran away.

Police Officer Joanne Gain of the Crime Scene Unit recovered two .22 caliber fired cartridge casings ("FCCs"), a Nike Air Jordan sneaker, and a Mountain Dew bottle from the murder scene. Officer Gain tested the Mountain Dew bottle for fingerprints and DNA. According to Police Officer John Cannon, an expert in firearms identification, these two .22 caliber FCCs were fired from the same unrecovered firearm. The bullet recovered from the decedent's body and the FCCs were not fired from the same firearm.

On April 14, 2008, at about 9:00 p.m., an unlicensed blue Lincoln town car was found on fire in the area of Tenth Street and Chew Avenue. Lieutenant Rodney Wright of the Philadelphia Fire Department determined that the vehicle was burned intentionally.

On April 15, 2008, Charles Hayward gave a statement to police. Hayward explained that in February he had sold the blue Lincoln town car that Hill had called in to 9-1-1 to Bernard Salmond, [Appellant's] brother. According to Hayward, about a week previously, Wiggins had robbed [Appellant] after they had been gambling.

On April 17, 2008, Richard Hack, a friend of Wiggins, gave a statement to police. Hack explained that two days before the murder, [Appellant], Wiggins, and himself were gambling. [Appellant] and Wiggins argued about gambling debt and then Wiggins choked [Appellant] and took $1,000 from him. For the next couple of nights, [Appellant] and his friends were in the area looking for Wiggins.

On January 13, 2010, Robert Bluefort told police about three weeks after the murder, [Appellant] confessed to him that he shot Wiggins. According to [Appellant], he had to shoot or be shot. Bernard Salmond told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and Bernard Salmond then discussed burning the vehicle. Benard Salmond stayed with Bluefort for about a month after the murder.

Banks was identified at trial by Michael Miller. Miller, who had interacted with Banks on many prior occasions, identified Banks from the surveillance video from Skyline Restaurant.

According to Halim Mackey and Andrea Williams, experts in latent print examination, Banks' fingerprints from his right middle finger and right ring finger were found on the Mountain Dew bottle recovered at the scene. An examination conducted through the AFIS database confirmed these findings.

[Appellant] testified that before the murder he was

gambling with Hack, Wiggins, and a couple individuals from the neighborhood. Wiggins won and there was a disagreement over payment. [Appellant] denied killing Wiggins or conspiring with anyone else to do so. [Appellant] presented evidence that he had an excellent reputation for peacefulness.

Banks presented testimony from Laurie Citino, an expert in DNA analysis and comparison. On May 31, 2012, Citino examined the swab taken from the Mountain Dew bottle. Citino was able to get DNA results from one marker, which would be able to include, but not match, or exclude an individual as providing the DNA. Citino was never given a DNA sample from Banks to compare to the sample taken from the Mountain Dew bottle.

(PCRA Court Opinion, filed 11/23/22, at 2-4).

Procedurally, a jury convicted Appellant on March 12, 2014, of third-degree murder and conspiracy to commit murder. The court sentenced Appellant on July 28, 2014, to an aggregate term of (25) to fifty (50) years' imprisonment. This Court affirmed Appellant's judgment of sentence on October 30, 2015. *Commonwealth v. Salmond*, 134 A.3d 109 (Pa.Super. 2015) (unpublished memorandum). Appellant did not seek further direct review.

On July 5, 2016, Appellant timely filed his first PCRA petition, and the PCRA court appointed counsel. On June 29, 2017, Appellant filed an amended PCRA petition. Following a hearing, the court denied PCRA relief on February 20, 2018. This Court affirmed the denial of PCRA relief on January 23, 2019, and our Supreme Court denied allowance of appeal on July 8, 2019. *See Commonwealth v. Salmond*, 209 A.3d 519 (Pa.Super. 2019) (unpublished

memorandum), *appeal denied*, 654 Pa. 522, 216 A.3d 232 (2019).

Appellant filed the current *pro se* PCRA petition on September 16, 2022. On October 24, 2022, the court issued Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing. The court denied PCRA relief on November 23, 2022. Appellant timely filed a notice of appeal on November 30, 2022. The court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant filed none.

Appellant raises eight issues for our review:

> Did the PCRA court err by dismissing [Appellant's] Post Conviction Relief Act Petition without an evidentiary hearing?
>
> Did the PCRA court err by failing to recognize and/or acknowledge [Appellant's] timeliness exception?
>
> Did the PCRA Court err by failing to recognize [Appellant's] government interference exception and [Appellant's] due diligence?
>
> Did the PCRA Court err by denying [Appellant] an evidentiary hearing on his claims of ineffective trial counsel and ineffective PCRA counsel?
>
> Did the PCRA Court err and violate [Appellant's] constitutional right by denying [Appellant] an evidentiary hearing when it denied his newly-discovered fact exception?
>
> Did the PCRA Court err and/or violate [Appellant's] Constitutional right by dismissing [Appellant's] PCRA petition and by denying him an evidentiary hearing without acknowledging and/or addressing all of [Appellant's] meritorious issues in his PCRA petition?
>
> Did the PCRA Court violate [Appellant's] Constitutional Right by dismissing [Appellant's] PCRA petition without correcting its illegal sentence of the [Appellant]?

Did the PCRA Court err by dismissing [Appellant's] PCRA petition without providing him effective counsel?

(Appellant's Brief at 6-7).

Preliminarily, the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Zeigler*, 148 A.3d 849 (Pa.Super. 2016). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The statutory exceptions to the PCRA time-bar allow very limited circumstances to excuse the late filing of a petition; a petitioner must also assert the exception within the time allowed under the statute. 42 Pa.C.S.A. § 9545(b)(1) and (b)(2).

To obtain merits review of a PCRA petition filed more than one year after the judgment of sentence became final, the petitioner must allege and prove at least one of the three timeliness exceptions:

(i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 6 -

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Generally, "a claim of ineffective assistance of counsel does not provide an exception to the PCRA time bar." *Commonwealth v. Sims*, 251 A.3d 445, 448 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 265 A.3d 194 (2021).

"The governmental interference exception permits an otherwise untimely PCRA petition to be filed if it pleads and proves that the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitutional or laws of this Commonwealth or the Constitution of laws of the United States." *Commonwealth v. Staton*, 646 Pa. 284, 293, 184 A.3d 949, 955 (2018) (internal citation omitted). "In other words, [the petitioner] is required to show that but for the interference of a government actor, he could not have filed his claim earlier." *Id.*

To satisfy the "newly-discovered facts" timeliness exception set forth in Section 9545(b)(1)(ii), a petitioner must demonstrate that "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015), *appeal denied*, 633 Pa. 761, 125 A.3d 1197 (2015). Due diligence requires the petitioner to take reasonable steps

to protect his own interests. ***Commonwealth v. Carr***, 768 A.2d 1164 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence; this rule is strictly enforced. ***Commonwealth v. Monaco***, 996 A.2d 1076 (Pa.Super. 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011).

The new constitutional right exception has two requirements: First, the right asserted must be a right newly recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania; second, the right must have been held by that Court to apply retroactively. ***Commonwealth v. Spotz***, 642 Pa. 717, 724, 171 A.3d 675, 679 (2017).

In ***Commonwealth v. Bradley***, ____ Pa. ____, 261 A.3d 381 (2021), our Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Bradley, supra*** at __, 261 A.3d at 401 (internal footnote omitted). Nevertheless, ***Bradley*** involved ineffectiveness claims that the petitioner raised on direct appeal following the dismissal of a timely, first PCRA petition. The ***Bradley*** Court noted that "an approach favoring the consideration of ineffectiveness claims of PCRA counsel on appeal (if the first opportunity to do so) does not sanction extra-statutory serial petitions." ***Id.*** at ____, 261 A.3d at 403. Consequently, this Court has declined to extend the holding of ***Bradley*** to cases involving untimely or serial petitions. ***See Commonwealth***

*v. Johnson*, No. 696 EDA 2022 (Pa.Super. filed Mar. 7, 2023) (unpublished memorandum)[2] (holding **Bradley** did not recognize new constitutional right permitting PCRA petitioners to file subsequent PCRA petitions in order to challenge prior PCRA counsel's ineffective assistance).

Instantly, Appellant's judgment of sentence became final on November 29, 2015, thirty days after this Court affirmed Appellant's judgment of sentence and the time for filing a petition for allowance of appeal with our Supreme Court expired. **See** 42 Pa.C.S.A. § 9545(b)(3). **See also** Pa.R.A.P. 1113 (providing 30 days to file petition for allowance of appeal with Supreme Court). Thus, Appellant had until November 29, 2016 to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). Appellant filed the current PCRA petition on September 16, 2022, which is facially untimely.

On appeal, Appellant attempts to invoke each of the PCRA's timeliness exceptions. In support of the governmental interference exception, Appellant argues that the government suppressed Appellant's phone records that demonstrated Appellant was not at the scene of the crime at the relevant time. Appellant claims he attached to his PCRA petition exhibits showing that he requested the records but that government officials ignored the requests.

Regarding the "newly-discovered facts" exception, Appellant alleges that Detective Williams was indicted in 2019, which calls into question the

---

[2] **See** Pa.R.A.P. 126(b) (stating this Court may cite to and rely on for persuasive value unpublished decisions of this Court filed after May 1, 2019).

detective's conduct in Appellant's case.[3]  Appellant also relies on an affidavit by Summer Morgan, which he claims would have been critical to impeaching testimony offered from Robert Bluefort that implicated Appellant in the murder.  With respect to the new constitutional right exception, Appellant cites **Bradley** for the proposition that he is entitled to raise claims of prior PCRA counsel's ineffectiveness at this time.

The PCRA court rejected Appellant's reliance on the governmental interference exception, reasoning:

> [Appellant] fails to prove that the government interference exception applies to his [underlying] alleged **Brady**[4] violation, because there is no evidence that the Commonwealth obtained his phone records or that he exercised due diligence.  …
>
> [Appellant] provides no evidence that the Commonwealth obtained his phone records.  A May 20, 2008 activity sheet indicating that Det. Williams provided Det. Dunlap with information to apply for a search warrant is insufficient to show the Commonwealth obtained the phone records or interfered with [Appellant's] ability to obtain his records.

---

[3] Relatedly, Appellant alleges that based on Detective Williams' indictment, Appellant is entitled to an updated analysis of the Mountain Dew bottle that was tested for Banks' DNA and fingerprints.  Nevertheless, postconviction DNA testing is permitted only where the motion is made in a timely manner and the petitioner explains how the testing would produce exculpatory results. **See** 42 Pa.C.S.A. § 9543.1(a).   Here, the PCRA court explained that Appellant's request for DNA testing was boilerplate and speculative. (**See** PCRA Court Opinion at 9).  Given that the fingerprint analysis is tied to Appellant's co-defendant Banks and not Appellant, we agree with the PCRA court that Appellant cannot show any DNA testing would yield exculpatory results. **See** 42 Pa.C.S.A. § 9543.1(a).

[4] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> [Appellant] did not exercise due diligence because he did not attempt to acquire his records until over eight years after his conviction. …[Appellant] alleges that he spoke with trial counsel prior to trial about obtaining his phone records but provides no documentation to support this assertion other than a copy of the May 20, 2008 Activity Sheet with a handwritten note which says "Cell phone records—GPS Can tell where people are." ***See*** September 16, 2022 *pro se* PCRA Petition Exhibit F2. Even if this assertion is true, [Appellant] failed to take any action regarding his phone records until June 29, 2022, when he sent the Department of Corrections' ("DOC") Office of Open Records a request for his phone records. While [Appellant] did send the DOC's Right-to-Know-Office a letter in March of 2016, [Appellant] only requested a copy of his discovery and did not request his phone records. ***See*** September 16, 2022 *pro se* PCRA Petition Exhibits B1-B3.

(PCRA Court Opinion at 6-7). We agree with the PCRA court's analysis that Appellant has failed to satisfy the governmental interference exception where Appellant has not shown there was any government action which prevented Appellant from bringing this claim sooner. ***See Staton, supra***.

Additionally, the PCRA court evaluated Appellant's reliance on the newly-discovered facts exception as follows:

> [Appellant's] claim that Det. Williams' November 21, 2019 indictment satisfies the newly-discovered fact exception for his claims that Det. Williams falsified evidence and that Det. Williams' indictment is after-discovered evidence, fails because he first learned about the indictment on February 25, 2020 [by his own admission] and did not file a PCRA petition within one year of when the claim could have been presented.

> [Appellant's] claim that Summer Morgan's July 28, 2022 affidavit satisfies the newly-discovered fact exception fails because he failed to show that he exercised due diligence. On January 13, 2010, Robert Bluefort was interviewed and provided a statement in which he stated that Appellant and

- 11 -

Bernard Salmond ("Bernard"), [Appellant's] brother and co-defendant, confessed to the murder and that he suggested burning Bernard's car around Fern Rock Transportation Center, in Philadelphia. N.T. 3/10/2014 at 22, 26, 29. Bluefort also stated that Bernard stayed at his house for "a good month or so after the murder." *Id.* at 29. At trial, Bluefort did not recall his statement.

On July 28, 2022, Summer Morgan, the mother of Bluefort's children, signed an affidavit stating that Bernard Salmond never lived or stayed at Bluefort's house after the murder in 2008 because she lived with Bluefort from 2007 to 2009. [Appellant] makes a boilerplate claim that…he exercised due diligence, so the claim is untimely and fails.

Even if the claim were timely, the claim would still fail because the affidavit would be used solely to impeach Bluefort's credibility. Additionally, the affidavit would likely not result in a different verdict because Bluefort did not recall his statement at trial and the affidavit would only contradict Bluefort's statement that Bernard stayed with him after the murder, not his statement that [Appellant] and Bernard confessed to the murder or that he suggested burning Bernard's car.[5]

(PCRA Court Opinion at 8-9). We agree with the PCRA court that Appellant failed to exercise due diligence necessary to succeed on these claims. *See Brown, supra*; *Monaco, supra*.

Finally, the PCRA court rejected Appellant's reliance on the new constitutional right exception, stating that *Bradley* "did not assert a new

_____

[5] To obtain relief on a substantive after-discovered-evidence claim under the PCRA once jurisdiction is established, a petitioner must demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586 (2007).

constitutional right which applies retroactively." (PCRA Court Opinion at 7). We agree with the PCRA court that Appellant's reliance on **Bradley** affords him no relief. **See Johnson, supra**. Therefore, Appellant's current PCRA petition remains time barred. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2023